WESTERN UNION TELEGRAPH COMPANY ET
AL. *v.* FOSTER AND MACLEOD ET AL., MEM-
BERS OF THE PUBLIC SERVICE COMMISSION
OF MASSACHUSETTS.

WESTERN UNION TELEGRAPH COMPANY ET
AL. *v.* MACLEOD ET AL., CONSTITUTING THE
PUBLIC SERVICE COMMISSION OF THE COM-
MONWEALTH OF MASSACHUSETTS.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF
MASSACHUSETTS.

NOBLE, AS PRESIDENT OF THE NEW YORK
STOCK EXCHANGE, *v.* WESTERN UNION TEL-
EGRAPH COMPANY ET AL.

NOBLE, AS PRESIDENT OF THE NEW YORK
STOCK EXCHANGE, *v.* UNITED TELEGRAM
COMPANY ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF MASSACHUSETTS.

Nos. 274, 275, 419, 420.   Argued April 29, 30, 1918.—Decided May 20,
1918.

The New York Stock Exchange, for lump sums, contracted with tel-
egraph companies to furnish them continuous stock quotations, to
be furnished by them in turn to their subscribers by ticker service;
each subscriber's application must be subject in terms to his being
approved by the Exchange before it became effective, and must
authorize the company to discontinue his service whenever so di-
rected by the Exchange, the contract declaring that the Exchange
reserved these rights to prevent improper use of the facts.  Under
this arrangement, the quotations, as received from the Exchange in
New York, were wired in Morse code to Boston where they were

decoded and wired to the tickers, the wires of other companies being in part used in the process. *Held*, that the transmission of the quotations remained interstate commerce until completed in the sub-·scribers' offices, and that an order of a Massachusetts commission, requiring the companies to cease discriminating against a would-be subscriber whom the Exchange disapproved, was a direct interference with such commerce, not sanctioned under the police power of the State or its power over streets crossed by the telegraph, which infringed the constitutional rights of thè companies and those of the Exchange.

224 Massachusetts, 365, reversed.

THE cases are stated in the opinion.

*Mr. Rush Taggart* and *Mr. John G. Milburn*, with whom *Mr. Arthur Lord* was on the briefs, for plaintiffs in error in Nos. 274 and 275.

*Mr. Henry S. Robbins*, with whom *Mr. Walter F. Taylor* was on the briefs, for appellant in Nos. 419 and 420.

*Mr. Patrick Henry Kelley* for Foster, defendant in error and appellee.

*Mr. H. Ware Barnum*, Assistant Attorney General of the State of Massachusetts, with whom *Mr. Henry C. Attwill*, Attorney General of the State of Massachusetts, was on the briefs, for Public Service Commission of Massachusetts:

If an individual had compiled this information in New York, taken train to Massachusetts, and after arrival there disclosed his knowledge either by lecture or publication in print, it would hardly be contended that the lecture or publication was not subject to state control, on the ground that the information had been acquired in one State and was being distributed in another. It would be plain that the interstate journey had ended. The essential features of this business cannot be altered by

reason of the fact that corporations rather than individuals are concerned, or that modern inventions have made greater speed possible.    The interstate transaction, to wit, the communication from the agent in New York to the agent in Boston, is in no way affected by the requirement that all persons in Massachusetts must be treated alike.    The case of *International Textbook Co.* v. *Pigg*, 217 U. S. 91, is not in point, since there the communication was direct, by mail, from the company in Pennsylvania to the pupil in Kansas (see at p. 100).

The information received by the companies in Boston is distributed to divers customers there.    If the companies' agents, after receipt of the information, had proceeded to set it up in type, strike off a hundred copies and send one by messenger to each of a hundred customers, it would seem clear that the interstate transaction was completed when the agent in Boston received the information, and that the business of printing the copies and distributing them should be regarded as entirely intrastate matter. Can it make any difference that the printing machine is set up in the customer's office and operated simultaneously with ninety-nine like machines in other offices?    The interstate transmission ceased before the retailing operation began, just as when the owner of goods begins retailing them out to different customers within the State the interstate transit has ceased.    *Commonwealth* v. *Peoples Express Co.*, 201 Massachusetts, 564; *Kirmeyer* v. *Kansas*, 236 U. S. 568.

The present case cannot correctly be regarded as an interstate transportation of property by the owner, the telegraph company, from New York to Boston, and a sale by the company in Boston of the property transported.    So far as a property right exists it is a right to keep to oneself or to publish or communicate to others the matter collected.    *Board of Trade* v. *Christie Grain & Stock Co.*, 198 U. S. 236; *Dodge Co.* v. *Construction Informa-*

*tion Co.*, 183 Massachusetts, 62.   In furnishing the quotations to the brokers the telegraph companies are exercising the property right derived by them from the Stock Exchange, under contract, but in no sense are they selling or transferring it.

However, even if the transaction is regarded as a transfer of property, the retailing out of property to a hundred different customers in Boston which has been received by one interstate shipment would be subject to the police regulations of the State.   So far as the communication of this information is spoken of as a sale of "news" it is applying an analogy to a sale of goods, and the principle of breaking bulk seems properly to be applied to such analogy, and would bar any claim to exemption from state regulation.

Even the doctrine of special immunities inherent in an "original package" does not nullify police regulation by a State as to retail trade.   *Austin* v. *Tennessee,* 179 U. S. 343; *Cook* v. *Marshall County,* 196 U. S. 261; *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342, 360.

There must be some time when a subject-matter, although moving in interstate commerce, becomes subject to state control.   *Mutual Film Corporation* v. *Ohio Industrial Commission,* 236 U. S. 230, 240.

The fact that it is physically impossible to operate ticker instruments in Boston by means of a transmitter located in New York, and that, accordingly, it is necessary to use the Morse telegraph system for the transmission from New York to Boston, would seem to strengthen the claim that the interstate character of the transmission ceased when that transmission ended.

Even if matter affected is held to constitute interstate commerce, the subject is open to state regulation until acted upon by Congress.

The power of a State to regulate common carriers, even though interstate commerce is incidentally affected,

is well established, and such regulations remain effective until such time as Congress may act upon the matter. *Western Union Telegraph Co.* v. *Crovo*, 220 U. S. 364; *Minnesota Rate Cases*, 230 U. S. 352; *Vermilye* v. *Western Union Telegraph Co.*, 207 Massachusetts, 401.

Such statutes are not regulations of interstate commerce but proper police regulations for the enforcement of the rules and policies of the common law. *Western Union Telegraph Co.* v. *James*, 162 U. S. 650; *Missouri, Kansas & Texas Ry. Co.* v. *Haber*, 169 U. S. 613, 634; *Western Union Telegraph Co.* v. *Wilson*, 213 U. S. 52, 55.

The requirement of the Massachusetts statute that the telegraph companies shall serve all citizens without unfair or unreasonable discrimination is but an enforcement of a common law duty. *Primrose* v. *Western Union Telegraph Co.*, 154 U. S. 1; *Western Union Telegraph Co.* v. *Call Publishing Co.*, 181 U. S. 92, and other cases.

Surely, if it is lawful for a State to enforce the common-law duty by means of a penalty, as was done in the *Crovo Case, supra,* it may provide a more perfect means of enforcement by specific order of a commission, and equitable relief. *Missouri Pacific Ry. Co.* v. *Larabee Flour Mills,* 211 U. S. 612.

Congress has not legislated with reference to any matters affected by the order of the Public Service Commission.

Assuming that an agreement of the telegraph company to furnish service only to persons approved by the Stock Exchange is wholly valid, the order of the commission and decree of the court in no way attacked or injured this property right, either with or without due process of law. The order is simply for the telegraph companies to remove the discrimination. They can do this either by furnishing the quotations to Mr. Foster in the exercise of the rights which they now have or may acquire from the Exchange,

or by ceasing to give to others in Massachusetts the service which is denied to him.

The Exchange was not an indispensable party to the proceedings before the Commission and in the court proceedings to enforce the order.

The clause of the contract by which the telegraph company agrees to furnish its service only to persons approved by the Stock Exchange is void so far as it prevents the telegraph company from serving the public without discrimination. *Commercial Union Telegraph Co.* v. *New England Tel. & Tel. Co.*, 61 Vermont, 241; *Chesapeake & Potomac Telephone Co.* v. *B. & O. Telegraph Co.*, 66 Maryland, 399, 416; *Bell Tel. Co. of Philadelphia* v. *Commonwealth ex rel. B. & O. Tel. Co.*, 3 Atl. Rep. 825; *Heaton Peninsular Button-Fastener Co.* v. *Eureka Specialty Co.*, 77 Fed. Rep. 288, 293.

The Stock Exchange has granted to the telegraph company, with knowledge of the public character of the business in which it is engaged, the right to distribute this information by ticker or otherwise. Having so parted with it, the property becomes subject to all obligations which the law, from reasons of public policy, attaches to property devoted to a public use. *Louisville & Nashville R. R. Co.* v. *United States*, 238 U. S. 1, 19.

Mr. Justice Holmes delivered the opinion of the court.

Four cases were argued together in this Court. The first two were suits in the Supreme Judicial Court of Massachusetts, one a statutory petition by the telegraph companies to have an order of the Public Service Commission annulled, the other a bill by the Commission to have the same order enforced. The cases were consolidated and reserved on the pleadings for determination by the full Court, which decreed that the petition of the plaintiffs in error should be dismissed and the order of

the Commission obeyed. 224 Massachusetts, 365. The order recited that the Gold and Stock Telegraph Company by the Western Union Telegraph Company lessee and the United Telegram Company had without just cause refused to supply to Calvin H. Foster the continuous quotations of the New York Stock Exchange by means of ticker service then supplied to others, declared the refusal an unlawful discrimination and required the two companies to remove the discrimination forthwith.

The material facts may be abridged as follows: The New York Stock Exchange, having a monopoly of the information collected by it on the floor of the Exchange concerning the prices quoted in transactions there, made contracts with the plaintiffs in error of the same general character as those before the Court in *Board of Trade* v. *Christie Grain & Stock Co.,* 198 U. S. 236, 246, and *Hunt* v. *New York Cotton Exchange,* 205 U. S. 322. By these contracts for specified lump sums the Exchange agreed to furnish to the Telegraph Companies simultaneously full and continuous quotations of prices made in transactions upon the Exchange. The Telegraph Companies "may" in their turn furnish quotations to their "patrons" at intervals of more than fifteen minutes subject to discontinuance upon objection of the Exchange, and may furnish continuous service by ticker to subscribers, provided the latter sign applications in duplicate, one of which is to go to the Exchange, the application not to be effectual until the subscriber is approved by the Exchange, agreeing that the Telegraph Company may discontinue the service "whenever directed so to do by said New York Stock Exchange." The application recognizes that the quotations are furnished under contract with the Exchange and agrees not to furnish the quotations to branch offices or correspondents unless first approved by the Exchange and also signing agreements, one of which is to be delivered to the Exchange. The contract states

that the intent of the Exchange in reserving the right to disapprove, etc., is only to prevent improper and unlawful use of the facts.

The Gold and Stock Telegraph Company's business is carried on by the Western Union Telegraph Company in the name of the former. The quotations are furnished to the latter in New York, telegraphed by it to the office of the Gold and Stock Company in Boston, translated from the Morse code into English, and thence transmitted by an operator to the tickers in the offices of the brokers who have subscribed and have been approved. The United Telegram Company, a New Jersey corporation, receives quotations for Boston alone, where is its principal office outside of New Jersey. They are furnished by the Exchange in New York, telegraphed to the Boston office over a wire of the Postal Telegraph Cable Company, and thence transmitted as in the other case. On these facts the plaintiffs in error say that the order is an unwarranted interference with commerce among the States and takes property without due process of law, setting up the Constitution of the United States.

We shall not discuss the bearing of the Fourteenth Amendment nor yet how far an order simply to remove a discrimination could be effectual when, if Mr. Foster were let in on the same terms as those now accepted as subscribers, he would agree that the Telegraph Company might discontinue its service without notice whenever directed so to do by the New York Stock Exchange. It is enough that in our opinion the transmission of the quotations did not lose its character of interstate commerce until it was completed in the brokers' offices and that the interference with it was of a kind not permitted to the States. The supposed analogy that has prevailed is that of a receiver of a package breaking bulk and selling at will in retail trade. But it appears to us misleading. We also think it unimportant that the contracts between the Ex-

change and the Telegraph Companies emphasize the element of quasi-sale for a lump sum and leave it to the interest of the Telegraph Companies to find subscribers. Neither that nor the intervention of an operator, or of another company, are in the least degree conclusive. Unlike the case of breaking bulk for subsequently determined retail sales, in these the ultimate recipients are determined before the message starts and have been accepted as the contemplated recipients by the Exchange. It does not matter if they have no contract with the Exchange, directly. It does not matter that if the Telegraph Companies did not deliver to any given one the Exchange could not complain. If the normal, contemplated and followed course is a transmission as continuous and rapid as science can make it from Exchange to broker's office it does not matter what are the stages or how little they are secured by covenant or bond.

Thus lumber purchased in Texas for the purpose of filling foreign orders was held to be carried in interstate commerce, although no contract prevented the purchaser from giving it a different destination. *Texas & New Orleans R.R. Co.* v. *Sabine Tram Co.*, 227 U. S. 111, 126. Practice, intent and the typical course, not title or niceties of form, were recognized as determining the character, and other cases to the same effect were cited. The principle was reaffirmed in *Railroad Commission of Louisiana* v. *Texas & Pacific Ry. Co.*, 229 U. S. 336; and is too well settled to need to be further sustained. *Western Oil Refining Co.* v. *Lipscomb*, 244 U. S. 346, 349. See *Swift & Co.* v. *United States*, 196 U. S. 375, 398, 399. It is admitted that the transmission from New York to Massachusetts by the Telegraph Company was interstate commerce. If so it continued such until it reached "the point where the parties originally intended that the movement should finally end." *Illinois Central R. R. Co.* v. *Louisiana R. R. Commission*, 236 U. S. 157, 163.

If the transmission of the quotations is interstate commerce the order in question cannot be sustained. It is not like the requirement of some incidental convenience that can be afforded without seriously impeding the interstate work. It is an attempt to affect in its very vitals the character of a business generically withdrawn from state control—to change the criteria by which customers are to be determined and so to change the business. It is suggested that the State gets the power from its power over the streets which it is necessary for the telegraph to cross. But if we assume that the plaintiffs in error under their present charters could be excluded from the streets, the consequence would not follow. Acts generally lawful may become unlawful when done to accomplish an unlawful end, *United States* v. *Reading Co.*, 226 U. S. 324, 357, and a constitutional power cannot be used by way of condition to attain an unconstitutional result. *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1. *Pullman Co.* v. *Kansas*, 216 U. S. 56. *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197, 203. The regulation in question is quite as great an interference as a tax of the kind that repeated decisions have held void. It cannot be justified "under that somewhat ambiguous term of police powers." *Western Union Telegraph Co.* v. *Pendleton*, 122 U. S. 347, 359. *Leisy* v. *Hardin*, 135 U. S. 100. *Savage* v. *Jones*, 225 U. S. 501, 520. *Western Union Telegraph Co.* v. *Brown*, 234 U. S. 542, 547. Without going into further reasons we are of opinion that the decrees of the Supreme Judicial Court must be reversed.

The other two cases were suits brought by the New York Stock Exchange against the Telegraph Companies severally and Foster. The bills set forth the respective contracts with the companies, allege that Foster made applications to them in the prescribed form, was given a full hearing before a committee of the Exchange, and that as a result the Exchange reached the conclusion that

105.    .    Opinion of the Court.

Foster had been conducting bucket shops and wanted the quotations in aid of such shops, and therefore disapproved the applications.  They set forth the order of the State Commission, the decree of the State Court and the intent of the Telegraph Companies to comply with the order, and allege that it is void as beyond the jurisdiction of the State Commission under the Constitution and acts of Congress and also as depriving the plaintiff of its property without due process of law.  Injunctions are prayed against delivery of continuous quotations to Foster or receipt of them by him unless and until he shall have acquired the right by contract with the approval of the Exchange.  Subsequently the members of the Public Service Commission were made parties, and then upon their motion the bills were dismissed by the District Court, the judge accepting the reasoning of the Supreme Court of the State.  The decision seems to have been upon the merits, but the question is certified whether the bill presents a controversy which arises under the Constitution or laws of the United States within the meaning of § 24 of the Judicial Code.  In view of the decision in the state cases probably it will not be necessary to prosecute these suits farther.  But it follows from what we have said that the decision of the District Court was wrong and that the decrees in these cases also must be reversed.  It is suggested, to be sure, that the Exchange would be barred by the state decree against the Telegraph Companies if it stood, because the Exchange by its contracts reserved the right to intervene in such suits.  It did not intervene and therefore would not have been bound.

*Decrees reversed.*