# CHARLESTON.

C. R. LAMB *et al. v.* W. S. KELLEY *et al.*

Submitted October 7, 1924.   Decided October 21, 1924.

1. BANKRUPTCY—*To Invalidate Lien, Challenging Party Must Prove Debtor Insolvent When Lien Obtained._*

   To invalidate a lien under section 67-f of the federal bankruptcy act, the party challenging it must allege and prove that the debtor was insolvent when the lien was obtained. (p. 413).

2. SAME—*Bankruptcy Jurisdiction in no Way Determines Debtor's Insolvency When Lien Obtained.*

   An adjudication in bankruptcy in no way determines whether the debtor was insolvent when a lien was obtained, there being no presumption arising from the adjudication that he was insolvent for any period before the petition in bankruptcy was filed.   (p. 413).

3. SAME—*Adjudication Does not Bind Strangers as to Facts or Subsidiary Law Questions on Which Based.*

   Although an adjudication in bankruptcy concludes all the world as to the status of the debtor *qua* bankrupt, it does not bind strangers as to the facts or subsidiary questions of law upon which it was based.   (p. 415).

4. SAME—*Unless Creditor Exercises Right to Intervene, He Remains Stranger to Proceeding.*

   The provisions of the federal bankruptcy act allowing creditors to intervene, are permissive only, and unless a creditor exercises the right, he remains a stranger to the proceedings. (p. 415).

5. JUDICIAL SALES—*Gross Inadequacy of Price Alone Sufficient to Withhold Confirmation.*

   Gross inadequacy of price alone is sufficient ground for withholding confirmation of a judicial sale.   (p. 416).

Appeal from Circuit Court, Calhoun County.

Suit by C. R. Lamb and others against W. S. Kelley, in which James Reed and others filed petition.   From a decree for plaintiffs, James Reed and others appeal.

*Reversed and remanded.*

*A. G. Mathews* and *Eakle & Alderson,* for appellants.

MILLER, JUDGE:

This suit was instituted at March rules, 1922, by C. R. Lamb and C. E. Cooper against the defendant, W. S. Kelley, and on March 6, 1922, an attachment was sued out and levied upon certain real estate and mineral rights owned by defendant Kelley in Calhoun County. At the same time two similar suits were instituted against the same defendant, one by plaintiff Lamb, and the other by Scott Duffield. Attachments in these two suits were, on March 6th, levied on the same property attached by plaintiffs.

The bill in the case here on appeal alleges that defendant Kelley was indebted to plaintiffs in the sum of $601.12; "that the said Kelley is a non-resident of the State of West Virginia; that he has left said state with intent to defraud his creditors; that he so conceals himself that a summons can not be served upon him; that the said W. S. Kelley has assigned and disposed of a material part of his property with intent to defraud his creditors; and that he has converted a material part of his property into securities and money with intent to defraud his creditors." It is further alleged that in November 1921, defendant Kelley had executed a deed of trust on a parcel of 53¾ acres, a part of the land sought to be subjected to plaintiffs' claims, to L. L. Ferrell, Trustee, to secure defendant's indebtedness to the Calhoun County Bank.

Plaintiffs pray that they may have a decree of recovery against the defendant Kelley for the amount of their claims against him; that their claims be decreed to be liens on the real estate attached; and that the said property be sold in satisfaction of their claims.

By an order entered in the cause, the date of which does not appear on the record, the circuit court found that plaintiffs were entitled to the relief prayed for; that the three attachment liens were of equal priority; but that the Calhoun County Bank was entitled to priority over the other claims as to the 56¾ acres of land, by reason of its deed of trust. And one Lorentz C. Hamilton was appointed special commissioner to sell the property attached.

On April 20, 1923, the special commissioner sold the real

estate attached, to Lamb, Cooper and Duffield, for the sum of $200.00.

Immediately following the sale, appellants James Reed and others filed their petition in the cause, praying that the special commissioner be restrained from acting further as commissioner and from making further sales, and that the sale be not confirmed, and that the commissioner be restrained from making a deed to plaintiffs or any other person, for the property so sold by him.

The grounds assigned for relief are: that petitioners had purchased the same property at the sale of one Benton C. Boggs, trustee in bankruptcy, acting under an order of the United States District Court for the Southern District of West Virginia; that when the bankruptcy court took jurisdiction of the estate of the debtor, no further proceedings should have been taken in the chancery causes; and that the sale made by the special commissioner was for a grossly inadequate sum.

From the appellants' petition filed in the cause, it appears that on May 10, 1922, two months and a few days after the attachments were levied, defendant Kelley was adjudged a bankrupt, upon the petition of creditors, by the district court. Notice was thereupon given to all creditors, including plaintiffs Lamb, Cooper and Duffield, of the pendency of the bankruptcy proceedings. At a meeting of creditors held June 30, 1922, appraisers were appointed and qualified, to appraise the estate of the bankrupt; and upon motion of the creditors present a trustee was named and directed to sell any and all of the bankrupt's estate, free and discharged from all liens. At the trustee's sale the petitioners purchased the property involved in the attachment proceedings, for the sum of $1,800.00. This sale was approved and confirmed by the bankruptcy court February 7, 1923.

Petitioners further alleged that "all of the plaintiffs in all three of said chancery suits, at the time of their institution, knew of the insolvency of the defendant W. S. Kelley; that they knew of the institution and pendency of said bankruptcy proceedings; that their claims were filed therein,

and that they participated with the other creditors of the said W. S. Kelley; that said plaintiffs in said chancery causes, and said purchasers at the sale so made by Lorentz C. Hamilton, Commissioner, under the said decree in the said chancery suit of Dr. C. R. Lamb and C. E. Cooper against W. S. Kelley and others, knew of the sale of said real estate by said trustee in bankruptcy, and of the purchase by these petitioners of said real estate before they purchased the same at the sale of said commissioner under decree of said chancery suit.''

With appellants' petition certain orders entered in the bankruptcy court were filed as exhibits, from which it appears that defendant Kelley was duly adjudged a bankrupt by the District Court, on the 10th day of May, 1922, upon a petition filed in that court against him on March 8, 1922, And it further appears that the property in question was sold by the trustee to the petitioners, as alleged, and that said sale was confirmed by the bankruptcy court. However, a list of creditors whose claims had been approved February 7, 1922, the date of the first dividend, does not disclose the names of either of the three plaintiffs in the attachment suits. Whether their claims were ever filed in the bankruptcy proceedings does not appear from the record thereof as exhibited in this cause. The claim of the Calhoun County Bank was held by the referee to be a secured debt and was paid from the proceeds of the trustee's sale.

The circuit court overruled petitioners' motion, and approved and confirmed the sale made by the special commissioner, and directed that the commissioner execute to the purchasers of the property sold by him apt and proper deeds conveying to them the real estate purchased by them; but the commissioner was directed to hold the proceeds of sale until the further order of the court. From this order the petitioners have appealed to this court.

The question presented to us is whether the state court had jurisdiction over the subject matter of the debtor's estate, which would warrant it in proceeding in the chancery cause to sell the property in question and to confirm the sale made

by the commissioner, in view of the motion made by petitioners, on their petition and the exhibits filed therewith.

Section 67c of the Federal bankruptcy law provides: "A lien created or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy or by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this Act;" etc. Section 67f of the same act is as follows: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt," etc. In *Liberty National Bank of Roanoke, Virginia,* v. *Bear,* 44 Sup. Ct. Rep. 499, 501, the Supreme Court of the United States held that section 67f "applies only to liens obtained against a person who was 'insolvent' when the lien was acquired. If the debtor was then solvent the lien is not invalidated although it was obtained within four months prior to the filing of the petition in bankruptcy. *Taubel-Scott-Kitzmiller Co.* v. *Fox,* 264 U. S. ——, 44 Sup. Ct. 396. To invalidate the lien the person challenging it must show that the debtor was insolvent when it was obtained. Such insolvency must be both alleged and proved. * * * And, generally, an adjudication in bankruptcy in no way determines whether or not the debtor was insolvent at the time a lien was obtained through legal proceedings against him;

there being no presumption arising from the adjudication that he was insolvent for any period before the petition in bankruptcy was filed."

Here petitioners do not directly allege that the debtor was insolvent at the time the lien was obtained. It is true they allege "that all of the plaintiffs in all three of said chancery suits, at the time of their institution, knew of the insolvency of the defendant W. S. Kelley." But if this may be considered a sufficient allegation of insolvency, no attempt was made to prove insolvency, except the filing of the record in the bankruptcy proceedings with the petition. But these exhibits do not show the insolvency of the debtor on March 6, 1922. The report of the referee filed February 7, 1923, shows that the claims approved by him then amounted to $18,645.15. An order entered in the bankruptcy court January 5, 1923, recites the fact that the trustee had made sales amounting to $9,180.00; but further reciting: "It appearing at this meeting that there may be an additional interest in real estate or mineral interest in real estate owned by the bankrupt in Clay County, said trustee is directed to investigate and report to the court with reference thereto." What other property was discovered and administered by the bankruptcy court does not appear from the record.

Section 1, clause 15 of the Federal bankruptcy law provides: "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, with intent to defraud, hinder or delay his creditors, shall not at a fair valuation, be sufficient in amount to pay his debts."

But, insolvency is not essential in every case to adjudication in involuntary bankruptcy. The petitioning creditors need not allege or prove insolvency where the act complained of is that the debtor has conveyed, transferred, concealed or removed any part of his property, with intent to hinder, delay or defraud his creditors, or where there has been a general assignment by the debtor, etc. *West Company* v. *Lea,* 174 U. S. 590; 7 C. J. 46; 1 Remington on Bankruptcy (3rd ed.), §§ 184-187. The petition on which the debtor

Kelley was adjudged a bankrupt is not made a part of the record in this case; and it does not appear what grounds were assigned by the creditors in the petition, or what acts of bankruptcy were relied on therein.

In *Gratiot State Bank* v. *Johnson,* 249 U. S. 246, it is said: "But an adjudication in bankruptcy, like other judgments *in rem,* is not *res judicata* as to the facts or as to the subsidiary questions of law on which it is based, except as between the parties to the proceeding or privies thereto. * * * But he (the creditor) is under no obligation to intervene, and the existence of the right to become a party is not equivalent to actual intervention. Unless he exercises the right to become a party, he remains a stranger to the litigation and, as such, unaffected by the decision of even essential subsidiary issues. *In re McCrum,* 214 Fed. Rep. 207, 213; *Cullinane* v. *Bank,* 123 Iowa, 340, 342. The rule is general that persons who might have made themselves parties to a litigation between strangers, but did not, are not bound by the judgment. Compare *Western Union Telegraph Co.* v. *Foster,* 247 U. S. 105, 115. No good reason exists for making an exception in the case of bankruptcy proceedings."

We find nothing in the record to indicate that plaintiffs had knowledge of Kelley's insolvency, if the fact existed. Their bill alleges that they were endorsers on defendant's note, which they were required to pay after it became due February 10, 1922. Their suit was instituted at March rules. There is no evidence that they knew that bankruptcy proceedings were about to be instituted against the debtor. The record of the bankruptcy proceedings does not show that they were parties thereto. In view of the facts presented by the record, and the decision of the Supreme Court of the United States and the other Federal courts, cited above, construing the Federal bankruptcy laws, we do not think that appellants' contention that the circuit court was without jurisdiction to proceed to a sale of the property attached and confirmation of such sale sufficient ground alone to reverse the decree complained of, as the case is now presented to us.

It appears that the property attached was appraised in the bankruptcy proceedings at $2,400.00, and sold by the trustee for $1,800.00. Plaintiffs purchased it at the commissioner's sale for $200.00. We think the price realized at the trustee's sale conclusive evidence that the property was worth much more than it brought at the special commissioner's sale. A number of decisions in this state hold that gross inadequacy of price alone is sufficient ground for withholding confirmation of a judicial sale. 8 Enc. Dig. Va. & W. Va. Rep. 739-740, and cases there cited. Here the property was sold for one-ninth of the price obtained by the trustee in bankruptcy. We are of opinion that the circuit court erred in confirming the sale to plaintiffs. In *Beaty* v. *Leon,* 18 W. Va. 291, we held that a sale for $1,200.00 was greatly inadequate, where three affidavits were filed to the effect that the land was worth from $2,400.00 to $3,200.00. See, also, *Kable* v. *Mitchell,* 9 W. Va. 492; *Hartley & Co.* v. *Roffe,* 12 W. Va. 401.

We are disposed to think that the petition of the purchasers at the trustee's sale filed in this cause, together with the exhibits made a part thereof, sufficiently presented to the circuit court the question of Kelly's solvency or insolvency at the time the attachments were levied on the property in question, and that it should have ascertained the fact by proper proceedings in the cause. From the record it appears that appellants' petition was filed and their motion overruled on the day the final order in the cause was entered. The respective rights of the plaintiffs and the intervening petitioners depended upon the fact of the solvency or insolvency of the debtor at the time the attachment was levied. This was a question of fact which does not seem to have been properly determined by the court. Attachment is strictly a proceeding at law, provided by statute. Shinn on Attachment and Garnishment, §7. And our statute, section 23, chapter 106 of the Code, provides that where any person interested files his petition before the proceeds of sale have been paid to plaintiff, or his assigns, within one year after sale, disputing the validity of plaintiff's attachment thereon, or stating a claim thereto, and gives security for

costs, the court, without any other pleading, shall impanel a jury to inquire into such claim, etc. Here jurisdiction in equity was acquired by alleging non-residence of the debtor, but the principles applicable to legal proceedings must pertain, since attachment proceedings are purely statutory. *Yellow Pine Lumber Company* v. *Mays,* 81 W. Va. 46. Here the validity of the attachment liens depends upon a question of fact, to be determined by the court or a jury, depending on whether the evidence is documentary or resort must be had to conflicting oral testimony, unless the right to a jury trial is waived.

For the foregoing reasons, the decree complained of will be reversed, and the cause remanded for further proceedings to be had in accordance with the views herein expressed.

*Reversed and remanded.*