GRANDIN FARMERS' CO–OP. ELEVATOR CO. OF GRANDIN, N. D., et al., v. LANGER, Governor, et al.

No. 565.

District Court, D. North Dakota, Southwestern Division.

Jan. 15, 1934.

John F. Sullivan (of Sullivan, Fleck & Sullivan), of Mandan, N. D., for complainants.

P. O. Sathre, Atty. Gen., and J. A. Heder, Commerce Counsel for State Railroad Com'rs, of Bismarck, N. D., for defendants.

SANBORN, Circuit Judge, and MILLER and JOYCE, District Judges.

This cause was heard, upon an application of the complainants for an interlocutory injunction, before a three-judge statutory court, under section 266 of the Judicial Code (28 USCA § 380), composed of Hon. John B. Sanborn, United States Circuit Judge, Hon. Andrew Miller, United States District Judge, and Hon. Matthew M. Joyce, United States District Judge. By consent of the parties, the hearing was had at St. Paul, Minn., on December 28, 1933, and was then continued to January 10, 1934, at Fargo, N. D., at which time the parties submitted their briefs and concluded their arguments. The complainants were represented by Mr. John F.

Sullivan (of Sullivan, Fleck & Sullivan), of Mandan, North Dakota; the defendants by Hon. P. O. Sathre, Attorney General of the state of North Dakota, and Hon. J. A. Heder, commerce counsel for the railroad commissioners of the state of North Dakota, and Assistant Attorney General of said state.

In determining whether an interlocutory injunction shall issue, we have before us the verified bill of complaint and the return of the defendants to the show cause order issued upon the application of the complainants for the injunction.

Since the facts alleged in the bill are not controverted except as to the amount in controversy on the question of jurisdiction, there is no occasion to make detailed findings of fact, and, for the purpose of the complainants' application, we find that all facts well pleaded in the bill are true.

The general situation out of which this controversy arises is as follows:

■ The complainants are the owners and operators of grain elevators located in the state of North Dakota, and their business consists of the buying, selling, storing, and shipping of the grain at such elevators with the intent and purpose of causing such grain to be transported to terminal markets situated outside of the state. That they are engaged in interstate commerce is virtually conceded, as it, of course, must be in view of the decisions of the Supreme Court of the United States in Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458, and Shafer v. Farmers' Grain Co., 268 U. S. 189, 45 S. Ct. 481, 69 L. Ed. 909. In the latter case that court said (page 198 of 268 U. S., 45 S. Ct. 481, 485, 69 L. Ed. 909):

"Buying for shipment, and shipping, to markets in other states, when conducted as before shown, constitutes interstate commerce; the buying being as much a part of it as the shipping."

The defendants are the Governor of the state and the board of railroad commissioners. Chapter 1 of the Laws of North Dakota for 1933 authorizes the Governor to "declare and maintain an embargo on the shipment out of this state of any agricultural product produced within the state, when the market price thereof reaches a point where the returns are confiscatory"; the Legislature declaring that "agricultural products taken from the soil constitute a drain on the natural resources of this state, and that the disposition thereof at confiscatory prices becomes a matter of public concern warranting an ex-

ecutive order to prevent the same." Pursuant to the authority assumed to have been conferred upon him under this act, the Governor has declared and is seeking to maintain an embargo upon the shipment of grain out of North Dakota.

Under the laws of North Dakota, the complainants are required to be licensed by the board of railroad commissioners. The board has been advised by the Attorney General that the violation of the terms of the embargo by the complainants would be sufficient cause for the revocation of their licenses. It has notified the complainants that "any warehouseman that ships wheat to a point outside the State before the embargo is raised, will upon complaint be cited to appear in Bismarck and show cause why his license shall not be cancelled as indicated on page 2 of the Attorney's opinion."

The complainants assert that the legislative act authorizing the embargo and the proclamations of the Governor declaring the embargo directly interfere with their business, seriously affect the value of their property, and impair the obligation of contracts necessarily entered into by them in the conduct of their business, and that the act and proclamations are void, being violative of the contract clause, the due process clause, and the commerce clause of the Constitution of the United States as well as in violation of provisions of the Constitution of the State of North Dakota.

The defendants contend that it does not appear that a sufficient amount is involved to give this court jurisdiction, and assert that the complainants have an adequate remedy at law, and, moreover, that the legislative act and the executive proclamations constitute no more than a lawful exercise of the police power of the state, in view of existing economic conditions.

■ The bill asserts that the action involves more than $3,000 exclusive of interest and costs. It is obvious that what the complainants seek to protect is the right to operate their elevators and to conduct their business free of the restrictions complained of. The value of that right is the amount in controversy.

"Complainant sets up a right to maintain and operate its plant and conduct its business free from wrongful interference by defendant. This right is alleged to be of a value in excess of the jurisdictional amount, and at the hearing no question seems to have been made but that it has such value. The relief sought is the protection of that right, now and in the

future, and the value of that protection is determinative of the jurisdiction." Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 126, 36 S. Ct. 30, 32, 60 L. Ed. 174. See, also, Scott v. Donald, 165 U. S. 107, 115, 17 S. Ct. 262, 41 L. Ed. 648; McNeill v. Southern Railway Co., 202 U. S. 543, 558, 26 S. Ct. 722, 50 L. Ed. 1142; Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 336, 27 S. Ct. 529, 51 L. Ed. 821; Bitterman v. Louisville & Nashville R. R., 207 U. S. 205, 225, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Berryman v. Board of Trustees of Whitman College, 222 U. S. 334, 345, 32 S. Ct. 147, 56 L. Ed. 225.

■ To justify a dismissal where the jurisdictional amount is in question, absence of jurisdiction must be shown to a legal certainty. Hill v. Walker (C. C. A. 8) 167 F. 241; T. C. Henry & Sons & Co. v. Colorado Farm & Live Stock Co. (C. C. A. 8), 164 F. 986; Barry v. Edmunds, 116 U. S. 550, 6 S. Ct. 501, 29 L. Ed. 729; Sheppard v. Graves, 14 How. 505, 510, 14 L. Ed. 518; Wiley v. Sinkler, 179 U. S. 58, 65, 21 S. Ct. 17, 45 L. Ed. 84; Smithers v. Smith, 204 U. S. 632, 642, 27 S. Ct. 297, 51 L. Ed. 656.

■ It is clear that this court has jurisdiction of this suit.

■ The railroad commissioners contend that the right of appeal from their orders, given by local law, to the state courts constitutes a speedy, adequate, and complete remedy at law.

"One who is entitled to sue in the federal circuit court may invoke its jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that court; and he cannot be deprived of that right by reason of his being allowed to sue at law in a state court on the same cause of action." Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 422, 42 L. Ed. 819.

The existence of a right of appeal to a state court from the order of a commission does not preclude the bringing of a suit in equity for an injunction. Chicago, B. & Q. R. R. v. Osborne, and Chicago & N. W. Ry. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878; Bacon v. Rutland R. R. Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538; Prendergast v. New York Telephone Co., 262 U. S. 43, 48, 43 S. Ct. 466, 67 L. Ed. 853; Railroad & Warehouse Commission v. Duluth Street Railway Co., 273 U. S. 625, 47 S. Ct. 489, 71 L. Ed. 807; Pacific Tel. & Tel. Co. v. Kuykendall, 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975.

Furthermore, it is obvious that the complainants have no appeal to any court from the proclamations establishing the embargo, and that the only reason that the railroad commissioners are joined is that they have threatened to use their regulatory power over the plaintiffs to assist in enforcing the orders of the Governor which the complainants claim are void.

■ Since the act of the Legislature and the proclamations of the Governor under it, against the enforcement of which the injunction is sought, appear to be in direct conflict with the commerce clause of the Constitution, it is unnecessary for us to consider whether they are in violation of other constitutional provisions.

■ The state has no power to interfere directly with interstate commerce, regardless of economic conditions. The regulation of such commerce is a matter of national concern. While in certain respects this country is an aggregation of independent states, it is, as respects interstate and foreign commerce, a nation. This must necessarily be true, since people living in many of our great centers of population are utterly dependent not only for their livelihood but for their lives upon an uninterrupted flow of food, fuel, and clothing in interstate commerce. If one state or all the states could place embargoes upon the export of the products of their mines, forests, fields, and oil wells, an inconceivable condition of national insecurity would follow. This is pointed out in Oklahoma v. Kansas Natural Gas Co., 221 U. S. 229, page 255, 31 S. Ct. 564, 571, 55 L. Ed. 716, 35 L. R. A. (N. S.) 1193, in which the court, speaking of the power of the states to lay embargoes, said:

"If the states have such power, a singular situation might result. Pennsylvania might keep its coal, the Northwest its timber, the mining states their minerals. And why may not the products of the field be brought within the principle? Thus enlarged, or without that enlargement, its influence on interstate commerce need not be pointed out. To what consequences does such power tend? If one state has it, all states have it; embargo may be retaliated by embargo, and commerce will be halted at state lines. And yet we have said that 'in matters of foreign and interstate commerce there are no state lines.' In such commerce, instead of the states, a new power appears and a new welfare,—a welfare which transcends that of any state. But rather let us say it is constituted of the welfare of all of the states, and that of each state is made the greater by a division of its resources, nat-

ural and created, with every other state, and those of every other state with it. This was the purpose, as it is the result, of the interstate commerce clause of the Constitution of the United States. If there is to be a turning backward, it must be done by the authority of another instrumentality than a court."

In Shafer v. Farmers' Grain Co., supra, the court said (page 198 of 268 U. S., 45 S. Ct. 481, 485, 69 L. Ed. 909):

"Wheat—both with and without dockage—is a legitimate article of commerce and the subject of dealings that are nation-wide. The right to buy it for shipment, and to ship it, in interstate commerce, is not a privilege derived from state laws, and which they may fetter with conditions, but is a common right, the regulation of which is committed to Congress and denied to the states by the commerce clause of the Constitution."

█ A state statute which, by its necessary operation, directly interferes with or burdens interstate commerce is a prohibitive regulation and invalid, regardless of the purpose for which it was enacted. Shafer v. Farmers' Grain Co., supra, 268 U. S. 189, 199, 45 S. Ct. 481, 69 L. Ed. 909; Crutcher v. Kentucky, 141 U. S. 47, 56, 58, 11 S. Ct. 851, 35 L. Ed. 649; Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 27, 30 S. Ct. 190, 54 L. Ed. 355; International Paper Co. v. Massachusetts, 246 U. S. 135, 141, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617; Western Union Telegraph Co. v. Foster, 247 U. S. 105, 114, 38 S. Ct. 438, 62 L. Ed. 1006, 1 A. L. R. 1278; Pennsylvania v. West Virginia, 262 U. S. 553, 596, 43 S. Ct. 658, 67 L. Ed. 1117, 32 A. L. R. 300; Air-Way E. A. Corporation v. Day, 266 U. S. 71, 81, 45 S. Ct. 12, 69 L. Ed. 169; Lemke v. Farmers' Grain Co., supra, 258 U. S. 50, 59, 42 S. Ct. 244, 66 L. Ed. 458; Eureka Pipe Line Co. v. Hallanan, 257 U. S. 265, 42 S. Ct. 101, 66 L. Ed. 227; United Fuel Gas Co. v. Hallanan, 257 U. S. 277, 42 S. Ct. 105, 66 L. Ed. 234; Binderup v. Pathe Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308; Stafford v. Wallace, 258 U. S. 495, 519, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229; Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 20 S. Ct. 96, 44 L. Ed. 136.

█ The same contention which is made here as to the right of the state to make local laws under its police power which are valid although affecting interstate commerce was made in the case of Lemke v. Farmers' Grain Co., supra, 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458. The court said (page 58 of 258 U. S., 42 S. Ct. 244, 247, 66 L. Ed. 458):

"It is contended that these regulations may stand upon the principles recognized in decisions of this court which permit the State to make local laws under its police power in the interest of the welfare of its people, which are valid although affecting interstate commerce, and may stand, at least until Congress takes possession of the field under its superior authority to regulate commerce among the States. This principle has no application where the State passes beyond the exercise of its legitimate authority, and undertakes to regulate interstate commerce by imposing burdens upon it. This court stated the principle and its limitations in the discussion of the subject in the Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. In the course of the opinion in that case, we said (230 U. S. p. 400, 33 S. Ct. 729, 740, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18):

" 'The principle, which determines this classification (between federal and state power), underlies the doctrine that the States cannot under any guise impose direct burdens upon interstate commerce. For this is but to hold that the States are not permitted directly to regulate or restrain that which from its nature should be under the control of the one authority and be free from restriction save as it is governed in the manner that the national legislature constitutionally ordains.' "

We find no help for the defendants in People v. Nebbia, 262 N. Y. 259, 186 N. E. 694, the so-called New York Milk Case. That case related to the right of the Legislature of the state of New York to regulate the wholesale and retail prices for milk handled within the state for consumption. The legislation was attacked on the ground that it interfered with contract and property rights; the commerce clause of the Federal Constitution was in no way involved.

The same may be said of the case of Home Building & Loan Ass'n v. Blaisdell, 54 S. Ct. 231, 235, 78 L. Ed. ——, decided by the Supreme Court of the United States on January 8, 1934, the so-called Minnesota Mortgage Moratorium Case. The only question there involved was whether an act of the Legislature of Minnesota granting relief to mortgagors under certain conditions was repugnant to the contract clause and the due process and equal protection clauses. We quote this language, however, from the opinion, which is appropriate in this case:

"Emergency does not create power. Emergency does not increase granted power

or remove or diminish the restrictions imposed upon power granted or reserved. The Constitution was adopted in a period of grave emergency. Its grants of power to the federal government and its limitations of the power of the States were determined in the light of emergency, and they are not altered by emergency. What power was thus granted and what limitations were thus imposed are questions which have always been, and always will be, the subject of close examination under our constitutional system.

"While emergency does not create power, emergency may furnish the occasion for the exercise of power. 'Although an emergency may not call into life a power which has never lived, nevertheless emergency may afford a reason for the exertion of a living power already enjoyed.' Wilson v. New, 243 U. S. 332, 348, 37 S. Ct. 298, 302, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024."

The New York Milk Case and the Minnesota Moratorium Case both represent asserted conflicts between the rights of the state, under its police power, to legislate for the general welfare of its people, and the rights of individuals in their contracts or property under the Constitution. This case, as we view it, is not primarily a conflict between the police power of the state and the rights of individuals, but a conflict between the power of the state and the power of the United States with respect to a subject with which, under the Constitution, Congress alone has a right to deal.

Our conclusion is that the act of the Legislature and the proclamations of the Governor under it are void.

An order will be entered granting the interlocutory injunction as prayed.