PAUL B. HUNT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE C. SHEPARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49508, 49509. Promulgated June 30, 1937.

*H. A. Mihills, C. P. A.*, for the petitioners.
*J. R. Johnston, Esq.*, for the respondent.

272

OPINION.

MELLOTT: Many of the facts set out in the above findings were considered by this Board in proceedings brought by 16 stockholders of the City Ice & Supply Co. (the old company) to set aside deficiencies determined against them as transferees of such company. The proceedings were consolidated for hearing, an unpublished memorandum opinion of the Board was filed, and on October 4, 1933, decision was duly entered that petitioners were not liable as transferees. (See *Fred Messerschmidt et al.*, Docket No. 47848.) The record in that hearing is not in evidence in the instant proceedings, though the same documents that were offered and received as exhibits therein, in addition to others, are again in evidence before us.

Petitioners contend that the decision of the Board in the *Messerschmidt* case, *supra*, is *res judicata* of the present controversy; but not so. The question determined therein was whether the stockholders of the old company—not these petitioners—were liable as transferees. These petitioners were neither parties to that proceeding nor in privity with the parties therein. Hence the doctrine relied upon is inapplicable. *State of Arkansas* v. *State of Tennessee*, 246 U. S. 158, 176; *Western Union Telegraph Co.* v. *Foster*, 247 U. S. 105, 115; *Bankers Pocahontas Coal Co.* v. *Burnet*, 287 U. S. 308. Nor is it material that the Commissioner has abandoned the theory relied upon in the *Messerschmidt* case, and now seeks to hold these petitioners as transferees. There is nothing in the law which would preclude him from determining a deficiency against one group of taxpayers on one theory and against another group on an entirely different theory. Of course, he can not recover the same tax twice; but he is not attempting to do so.

The fact that some of the findings herein are at variance with those made in the *Messerschmidt* case is not being overlooked. Thus it was there held, under the evidence then before the Board, that the outstanding preferred stock of the old company was redeemed by it out of its own assets, after which the stockholders of the old company sold their common stock to Hunt and Shepard. But evidence in addition to that which was before the Board when such finding was made has now been adduced, which convinces us that the transfer of the assets of the old company to Hunt and Shepard, and to their nominee, the new company, occurred prior to the sale of the stock under the escrow agreement. Moreover, both parties tacitly admit that the assets were transferred prior to the sale of the stock.

It is also apparently admitted by both parties that the basis for determining the gain or loss from the sale or other disposition of the property of the old company was $281,756.79. If the assets were disposed of in a transaction in which gain or loss under the statute was to be recognized, then it must be held that the old company—it keeping its books on the accrual basis—should have accrued upon its books the sum of money plus the fair market value of the property which it was entitled to receive. (Sec. 202 (c), Revenue Act of 1926.) Its gain, therefore, which should have been accrued upon its books is, as computed by the respondent, the excess of the amount realized—$337,838.54 cash, plus $221,666.67, value of the preferred stock of the new company—over the basis of $281,756.79, or $277,748.42.

But, say petitioners in their pleadings: (a) The assets were acquired by them from the old company as purchasers for value, an adequate consideration being paid therefor; (b) they were not at any time owners of the capital stock of the old company; and (c) the proposal for the purchase of the assets of the old company by them, and under which such purchase was made, while it contained an agreement that they, as purchasers, were to assume all existing liabilities of the old company, did not contemplate that any liabilities other than those appearing upon the books of the company as of the close of business on May 8, 1926, should be assumed or paid by them.

The respondent contends that petitioners, through their agents and attorneys, having suggested a plan thereafter carried out, by which they were to purchase all of the assets and continue the going business of the old company, for a consideration of cash and stock, which cash and stock were to be distributed and were distributed to the stockholders of the vendor corporation, as part of the general plan, have thus made themselves liable, under the trust fund doctrine, for the income taxes of the vendor, it being thus deprived of any means of making payment of such taxes.

In support of this contention respondent relies upon the well settled principle of law that where assets of a corporation are sold for an equivalent consideration, which under an agreement is paid to the stockholders, leaving the corporation without assets to satisfy its creditors, the purchasing corporation is liable to creditors of the selling corporation to the extent of the value of the property received, the sale being in fraud of creditors and the purchaser being a party to such fraud through his knowledge that the result of the transaction must necessarily leave such creditors with no assets from which to satisfy their claims. *Woodley Petroleum Co.*, 16 B. T. A. 253; *Gideon-Anderson Co.*, 20 B. T. A. 106; *Wayne Body Corporation*, 22 B. T. A. 401; *Magnolia Window Glass Co.*, 23 B. T. A. 1242; *Signal Gasoline Corporation*, 25 B. T. A. 532; and *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401; and *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77.

Upon brief petitioners argue, first, that the tax liability here under consideration not only was not known at the time of the conveyance of the assets, but also could not have materialized until after the assets were sold, and hence no liability existed which could have been, or was, assumed by them as purchasers. We agree. The liability for the tax did not arise until the assets were transferred. The assumption by the petitioners of the existing liabilities of the old company did not include the tax here in dispute. Nor did the transfer of the assets *ipso facto* constitute a fraud upon the United States as a creditor; for it was not a creditor of the old company prior to, or at the time, the assets were transferred.

We also agree with petitioners' contention that the principle of law and the cases relied upon by the respondent relating to tax liabilities imposed as a result of the operations of a business and to liabilities which accrued and existed prior to the date of the conveyance of the assets are not determinative of the issue before us.

The case at bar, as pointed out by petitioners, is somewhat analogous to *Reid Ice Cream Corporation* v. *Commissioner*, 59 Fed. (2d) 189. In that case the corporation purchased assets of another corporation for $337,500 and assumed the selling companies' liabilities as of a specified date, together with subsequent liabilities incurred in ordinary routine business. The purchaser paid the seller the purchase price of $337,500 and the latter distributed it to its stockholders. Neither the purchaser nor its stockholders participated in the profits of the sale. The tax return of the seller showed a tax liability resulting from the profits of the sale, which the respondent proposed to assess and collect from the purchaser under section 280 of the Revenue Act of 1926. The Circuit Court of Appeals for the Second Circuit decided that the purchasing corporation did not

assume the liability for the tax imposed on the profit; this liability did not arise until the sale was completed and was not therefore an existing liability. The court said:

> A tax on the profits of a sale such as is involved here is one of extraordinary liability, and, unless assumed in plain terms, ought not to be imposed upon the transferee of the property. Where the parties spoke they referred to the liabilities incident to the business. An income tax on the seller's profits is not a liability of the business; it is a liability which follows the sale, and the business changes hands before the tax liability arises.
>
> ⁕ ⁕ ⁕ ⁕ ⁕ ⁕ ⁕
>
> A purchaser of property for value has, in his position as a transferee, no liability to pay his vendor's tax; if he incurs such, he does so by a promise *ex contractu*. His liability is not the liability of the transferee but the liability of a promisor. The act deals with the peculiar liability of the transferee. Here there was no taxable fund until after the sale, and the petitioner never partook of a taxable fund because no tax liability arose except upon receipt by the seller of the purchase price. That, and not the assets sold, constitutes the taxable fund. There could not be any claim against the transferred assets. Therefore section 280 creates no liability; it is remedial and presupposes a liability for the enforcement of which it is designed to furnish a remedy.

But there are a number of important differences between the facts in the instant proceedings and those in *Reid Ice Cream Corporation, supra*. In the *Reid* case the purchaser paid the seller the purchase price. In the instant proceedings, although petitioners promised that they would cause the purchase price to be paid, delivered, and surrendered to the old company, they did not do so. In the *Reid* case the findings show that the purchaser did not participate in the profits of the sale. In the instant proceedings petitioners appropriated to their private use the entire proceeds of the sale. They used these proceeds to purchase the stock of the old company under the terms of the escrow and option agreements. When they did this, they were not acting as the agents of that company. They, and not the old company, were parties to the agreement whereby the escrow agent was to purchase the stock with funds they were to furnish. That they exercised the exclusive option given them is apparent from the receipts given by the stockholders and the receipt which Shepard executed for the stock.

The remaining contentions of the petitioners may be considered together. True it is that if petitioners had purchased the assets of the old corporation for an adequate consideration, which had been paid to it, they would not be liable for the vendor's tax upon such transaction, in the absence of an express agreement to pay it. (*Reid Ice Cream Corporation* v. *Commissioner, supra.*) But they did not pay the consideration for the assets of the old company to it. Instead of doing so they appropriated the funds and property, which under their contract they promised would be delivered to it—cash

in the amount of $337,838.54 and preferred stock of the new company of the value of $221,666.67—and used it to purchase the stock of the old company from its stockholders in accordance with the terms of the escrow and option agreements. As pointed out, *supra*, the old company kept its books and filed its income tax returns on the accrual basis. When it transferred its assets to petitioners and their nominee, it was required to accrue upon its books the consideration which was to be paid (*Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182) and its liability for the tax upon the profit immediately came into being and likewise should have been accrued. The Government had a perfect right to look to the proceeds of the sale for the payment of the tax. Such proceeds constituted the taxable fund to which the tax attached. (*Reid Ice Cream Corporation* v. *Commissioner, supra.*) In equity, if not in law—and we need not decide which—such fund should have been used for the payment of the tax. The diversion and appropriation of this fund by these petitioners, leaving the old company without funds to pay the tax upon the profit derived from the disposition of its assets (cf. *Phillips* v. *Commissioner*, 283 U. S. 589; *Rubel* v. *Commissioner*, 74 Fed. (2d) 27), made them liable for the payment of the tax.

We hold that the respondent did not err in determining that the petitioners are liable under the provision of section 280 of the Revenue Act of 1926, as transferees of the property of the City Ice & Supply Co., in respect of the income tax imposed upon said company for the year 1926.

Reviewed by the Board.

*Judgment will be entered for the respondent.*