On Rehearing.
PONDER, Justice.
The facts are succinctly set out in the opinion on original hearing and will not herein be reiterated.
We granted a rehearing to reconsider our ruling that the assessment of the gas gathering tax, LSA-R.S. 47:671, against the plaintiff natural gas company was not violative of the Commerce Clause. It was also called to our attention on application for rehearing that this court had overlooked the fact that in an agreed stipulation of facts it was stated that $5,582.60, which was paid by plaintiff in taxes should be refunded.
In argument counsel for the defendant concedes that if the facts herein are the same as those in the case of Michigan-Wisconsin Pipe Line Co. v. Calvert (Panhandle Eastern Pipe Line Co. v. Calvert), 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583, then the tax is not due but he argues that *607 in those cases the “taking” into the pipelines of the plaintiffs therein was solely for interstate transmission, whereas in the present case it was stipulated that there was no way of determining how much of plaintiff’s gas would be sold in Louisiana and how much would be transported to Arkansas.
It is the contention of plaintiff that approximately ^ths of the gas was for interstate transmission and Ys for intrastate use and that under the decision in the Michigan-Wisconsin case and United Fuel Gas Company v. Hallanan, 257 U.S. 277, 42 S.Ct. 105, 66 L.Ed. 234, the assessment was violative of the Commerce Clause.
Although on original hearing we found the case of Michigan-Wisconsin, supra, to be distinguishable from the present controversy, this is doubtful in view of the following reasoning set forth in that case, viz.:
“* * * It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it. Memphis Natural Gas Co. v. Stone, 1948, 335 U.S. 80, 87, 68 S.Ct. 1475, 92 L.Ed. 1832; Western Live Stock v. Bureau of Revenue, supra, 303 U.S. [250] at page 258, 58 S.Ct. [546] at page 550 [82 L. Ed. 823]. And if a genuine separation of the taxed local activity from the interstate process is impossible, it is more likely that other states through which the commerce passes or into which it flows can with equal right impose a similar levy on the goods, with the net effect of prejudicing or unduly burdening commerce.
“The problem in this case is not whether the State could tax the actual gathering of all gas whether transmitted in interstate commerce or not, cf. Hope Natural Gas Co. v. Hall, [274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049] supra, but whether here the State has delayed the incidence of the tax beyond the step where production and processing have ceased and transmission in interstate commerce has begun. Cf. Utah Power & Light Co. v. Pfost, [286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038] supra-. * *
It was admitted in the stipulation of facts that this litigation involves only that portion of the gas sold to markets in Arkansas. It is also admitted that plaintiff corporation holds a certificate of convenience and necessity issued by the Federal Power Commission authorizing it to transmit and sell in interstate commerce gas received into its pipeline for such purpose, and that during the relevant period plaintiff sold 1,935,726 M.C.F. of gas purchased from its two Lou *609 isiana sources (Cotton Valley Operators’ Committee in Webster Parish and Haynes-ville Area of Claiborne Parish) of which 363,200 M.C.F. were sold to markets in Louisiana and 1,572,526 M.C.F. to markets in Arkansas. Plaintiff’s main pipeline is an eight-inch line (originating near the plant of Cotton Valley Operators’ Committee in Webster Parish and terminating at Okay, Howard County, Arkansas) some 80 miles in length of which approximately 14 miles lie in Louisiana and 66 miles lie in Arkansas. Plaintiff also has a six inch line, 17.15 miles in length, lying wholly in Louisiana which originates in the Haynesville Area of Claiborne Parish and joins the main pipeline South of Spring-hill in Webster Parish.
It was the holding of this court on original hearing that when the gas entered the metering equipment owned by plaintiff, title passed to plaintiff and this was the taxable incidence. It was held that at this point the gas had not entered into interstate transportation.
It is further admitted in the stipulation of facts that the gas market in Louisiana was commingled with the gas destined for markets in Arkansas.
Although in the Michigan-Wisconsin case the gas was put into the plaintiff’s pipeline solely for transmission in interstate commerce still the language used and the rationale therein fits the present case.
It is to be noted that the Michigan-Wisconsin case was consolidated with the case of Panhandle Eastern Pipe Line Co. v. Calvert and in the opinion it is set out in a foot-note that Panhandle makes sales in Texas to three small customers, rather than sending all of its gas outside the State as Michigan-Wisconsin did but the court said that Panhandle’s operations are not significantly different from those of Michigan-Wisconsin.
The Texas statute involved in the Michigan-Wisconsin case is admittedly the same as involved herein. The court (in interpreting the statute) at page 169 of 347 U.S. at page 402 of 74 S.Ct. said:
“Put the tax here is not levied on the capture of production of the gas, but rather on its taking into interstate commerce after production, gathering and processing.”
Then follows:
“The State Appellate Court recognized that nothing was done to the gas at the point of ‘taking’; its form was not changed in any way; it merely continued its journey. However, the court thought that it would be unfair to base a decision on the fluid nature of natural gas, and that there was in fact a two-step process, taking and transmission, with interference in between found in title passing and processing. But the processing, on which this tax *611 is not imposed, was done by Phillips and took place prior to the taxable event of ‘taking.’ As for the interference of title passing, appellees readily admit this levy was designed to avoid taxing the sale; and we think that, as a basis for finding a separate local activity, the incidence must be a more substantial economic factor than the movement of the gas from a local outlet of one owner into the connecting interstate pipeline of another. Such an aspect of interstate transportation cannot be ‘carve (d) out from what is an entire or integral economic process’, Nippert v. City of Richmond, supra, 327 U.S. [416] at page 423, 66 S.Ct. [586] at page 589 [90 L.Ed. 760], by legislative whimsy and segregated as a basis for the tax. The separation must be realistic.”
Then the court went on to state that the taking of the gas, is not so separate and distinct from interstate transportation as to support the tax and if Texas may impose this “first taking” tax measured by the total volumne of gas so taken, then Michigan and the other recipient states have at least equal right to tax the first taking or “unloading” from the pipeline of the same gas when it arrives for distribution and a burden would thereby be placed on interstate commerce in violation of the Commerce Clause.
The case of United Fuel Gas Company v. Hallanan, 257 U.S. 277, 42 S.Ct. 105, 66 L.Ed. 234 involved a tax on transportation of gas. The plaintiff gathered gas and purchased natural gas, mostly in West Virginia, and distributed it through its pipes which extend to or beyond the state line in various places and also connects with the pipes of other companies that extend beyond the State. The plaintiff in the year in question dealt with a total amount of 54,973,588 M cubic feet of which all but a little over a million M cubic feet was gathered in West Virginia. There were sold directly to consumers in West Virginia 11,590,656 M cubic feet; a little over 10,000,000 M cubic feet to consumers in other States and the remainder was sold to four connecting companies transported only in interstate commerce, the others dealt mostly with interstate sales some intrastate sales. In holding that the state tax could not be levied the court said:
“In short the great body of the gas starts for points outside the State and goes to them. That the necessities of business require a much smaller amount destined to points within the State to be carried undistinguished in the same pipes does not affect the character of the major transportation. Neither is the case as to the gas sold to the three companies changed by the fact that the plaintiff, as owner of the gas, and *613 the purchasers after they receive it might change their minds before the gas leaves the State and that the precise proportions between local and outside deliveries may not have been fixed, although they seem to have been. The typical and actual course of events marks the carriage of the greater part as commerce among the States and theoretical possibilities may be left out of account. There is no break, no period of deliberation, but a steady flow ending as contemplated from the beginning beyond the State line. Ohio R. Commission v. Worthington, 225 U.S. 101, 108, 32 S.Ct. 653, 56 L.Ed. 1004; United States v. Reading Co., 226 U.S. 324, 367, 33 S.Ct. 90, 57 L.Ed. 243; Western Union Telegraph Co. v. Foster, 247 U.S. 105, 113, 38 S.Ct. 438, 62 L.Ed. 1006, 1 A.L.R. 1278.”
On reconsideration we have arrived at the conclusion that the cases of Michigan-Wisconsin Pipe Line Co. v. Calvert (Panhandle Eastern Pipe Line Co. v. Calvert), supra; and United Fuel Gas Company v. Hallanan, supra, are controlling and that the tax imposed on the Arkansas sales would be violative of the Commerce Clause.
For the reasons assigned, the judgment of the lower court is affirmed. All legal costs to be paid by appellants.
HAMLIN, Justice ad hoc, dissents with written reasons.