**PEPSICO, INC., Plaintiff-Appellant,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants-Appellees.**

**PEPSI–COLA BOTTLING COMPANY OF CORVALLIS, INC., Plaintiff-Intervenor-Appellant,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants-Appellees.**

**Nos. 294, 295, Dockets 72–1911, 72–1912.**

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1972.

Decided Nov. 20, 1972.

Milton Handler, New York City (Kaye, Scholer, Fierman, Hays & Handler, and Fred A. Freund, Elizabeth Head, Herbert Schreiber, and Robert A. Burka, New York City, of counsel), for plaintiff-appellant.

Robert J. Sisk, New York City (Hughes Hubbard & Reed, and James B. Kobak, Jr., New York City, of counsel), for plaintiff-intervenor-appellant.

Frank H. Wohl, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., and T. Gorman Reilly, Asst. U. S. Atty., of counsel), for defendants-appellees.

Harold D. Rhynedance, Jr., and James P. Timony, Washington, D. C., of counsel, for defendant-appellee, the Federal Trade Commission.

Before FRIENDLY, Chief Judge, and MEDINA and ANDERSON, Circuit Judges.

FRIENDLY, Chief Judge:

On July 15, 1971, the Federal Trade Commission (FTC) filed a complaint against PepsiCo, Inc. under § 5 of the Federal Trade Commission Act.[1] The essential allegation was that PepsiCo had "hindered . . . competition in the distribution and sale of pre-mix and post-mix syrups and soft drink products sold under its trade names by restricting its bottlers from selling outside of a designated geographical area." Annexed to the complaint was a form of order which the FTC proposed to issue if the evidence warranted. The order would prohibit PepsiCo, among other things, from entering into, continuing, enforcing, or renewing any contract that would limit the territory in the United States wherein bottlers might sell, or from refusing to sell to any bottler because of the territory wherein he sold. Also annexed was a letter which PepsiCo would be directed to send its bottlers within 60 days after issuance of the proposed order. PepsiCo's answer, dated August 23, 1971, included "as a complete defense" an allegation "that the complaint herein is fatally defective in that it fails to join as parties respondent persons needed for a just adjudication, to wit the soft drink bottlers who have entered into the challenged agreements . . . and made substantial investments in plant, manufacturing and distribution facilities in reliance thereon and upon the territorial security afforded them thereunder, and ignores the property and procedural rights of these indispensable parties whose economic interests would be most directly and adversely affected by the proposed order accompanying the complaint."

Meanwhile the Pepsi-Cola bottlers had not been idle. Two motions to intervene, both dated August 11, 1971 and signed by the same counsel who have represented the intervening plaintiff in this action, Pepsi-Cola Bottling Company of Corvallis, Inc., were submitted to the Hearing Examiner. One of these was on behalf of Pepsi-Cola Albany Bottling Company, Inc., Pepsi-Cola Bottling Company of Central Virginia, and Pepsi-Cola Bottling Company of Tampa. An affidavit supporting the motion set forth the facts concerning the movants' exclusive contracts and alleged that there was no assurance that their interests would be adequately represented by PepsiCo. The other was on behalf of Pepsi-Cola Bottlers' Association. This motion alleged that the Association "effectively represents the interests of all the franchised Pepsi-Cola Bottlers in the

---

1. A summary of the complaint was unofficially published in 3 Trade Reg.Rep. ¶¶ 19,443, 19,740. Similar complaints were filed against six other manufacturers of soft drink syrups: Dr. Pepper Co.; The Seven-Up Co.; Royal Crown Cola Co.; and the Coca-Cola, Cott and Crush groups.

United States." A supporting affidavit stated that 512 of the 513 Pepsi bottlers were members of the Association, repeated the allegation that the interests of PepsiCo and the bottlers were not identical, denied that the franchises had an anti-competitive effect, and contended that, absent the enforcement of territorial exclusivity, "a relatively few, large Bottlers, each serving extensive geographical areas and catering almost exclusively to large retail customers, will drive local Bottlers out of the business." On November 18, 1971, the two motions were granted by the Hearing Examiner whose order is quoted in relevant part below.[2] He characterized his action as "the granting of the right of full participation" which might "aid the examiner and the Commission in properly resolving the issues presented."

During the same period, PepsiCo, relying in considerable part on the analogy of F.R.Civ.P. 19, had moved to dismiss the complaint because of the nonjoinder of the 513 Pepsi bottlers. The Hearing Examiner denied the motion, finding that joinder of all the bottlers "would create a completely unmanageable situation for trial purposes" and that his grant of intervention to the Bottlers' Association had not been "on a limited basis."

PepsiCo then sought leave to file an interlocutory appeal to the Commission. The FTC chose instead to treat the question as if it had been certified to it with the Hearing Examiner's recommendation. In an opinion dated March 23,

1972, also dealing with similar motions by the other soft drink syrup manufacturers against which the FTC was proceeding, see fn. 1, the Commission denied the motions to dismiss for failure to join indispensable parties.

Shortly thereafter PepsiCo instituted this action in the District Court for the Southern District of New York to enjoin the FTC from continuing the proceeding unless it joined all the bottlers. The plaintiffs moved for a preliminary injunction, the defendants for dismissal of the complaint. While these motions were pending, Pepsi-Cola Bottling Company of Corvallis, Inc., an Oregon bottler, moved to intervene as a plaintiff, and this motion was granted. Judge Cannella then granted the defendants' motion to dismiss, 343 F.Supp. 396, holding that since review was premature, the court lacked jurisdiction over the subject matter.

These appeals followed and, on appellants' request, were given expedited treatment. We shall deal first with the case as it stood before the FTC and the district court, and will later consider the effect of a motion, made after the filing of notices of appeal, by FTC complaint counsel which sought summary judgment with respect to the invalidity of the exclusive territorial clauses and gave notice of counsel's intention to propose a "Metro Area Bottler Handicap" provision as a remedy.

### I.

It is desirable to consider at the outset what status the FTC has accorded

---

2. It is ordered that the applicants, Pepsi-Cola Bottlers' Association; Pepsi-Cola Albany Bottling Company, Inc.; Pepsi-Cola Bottling Company of Central Virginia, and Pepsi-Cola Bottling Company of Tampa, motion to intervene in this matter be granted, including the following:

    1. The right to object to questions propounded by counsel in support of the complaint and counsel for respondent.

    2. The right to cross-examine witnesses proffered by counsel in support of the complaint or counsel for respondent.

    3. The right to offer evidence, both documentary and testimonial, at the conclusion of respondent's defense.

    4. The right to object and cross-examine will be granted subject to strict control of the hearing examiner and the right to proffer evidence will be limited to that relevant evidence which is not repetitious of that proffered by counsel in support of the complaint or counsel for respondent.

    5. The right to file proposed findings of fact and briefs with the hearing examiner as he orders.

the bottlers who have intervened and would accord others who might seasonably seek to do so. The governing statute, 15 U.S.C. § 45(b), provides: "Any person, partnership, or corporation may make application, and upon good cause shown may be allowed by the Commission to intervene and appear in said proceeding by counsel or in person." The FTC's Rules of Practice, 16 C.F.R. § 3.-14, state, in relevant part, that "[t]he hearing examiner or the Commission may by order permit the intervention to such extent and upon such terms as are provided by law or as otherwise may be deemed proper."

If this had been a civil action, intervention by the bottlers would have been not a matter of grace but of right, F.R.Civ.P. 24(a), and such an intervenor would have had all the rights of a party subject only to reasonable provisions designed to assure against repetitious evidence and argument. We see no reason why a different principle should prevail before administrative agencies, except that the scope of the proceeding and the consequent possibilities of delay may make it reasonable to undertake more vigorous policing against dilatory tactics than would ordinarily be necessary in the courts. Indeed, we think the Supreme Court has held precisely this. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 231–239, 59 S.Ct. 206, 83 L.Ed. 126 (1938); FCC v. National Broadcasting Co., Inc., (KOA), 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943).

There is no reason to believe that the status accorded the four intervenors was anything less than is required. Although the appellants have made much of the fact that the Hearing Examiner's order granting leave to intervene provides for only five particular rights, see fn. 2, the specific inclusion of these rights does not imply an exclusion of all others. We therefore have no cause to think that, if the intervenors wished to make motions or argue orally, the Examiner would prevent them from doing so. A more serious question is whether they could appeal to the Commission from the Examiner's initial decision. Rule 3.52(a), 16 C.F.R. § 3.-52(a), limits this right to parties, and Rule 3.41(c), 16 C.F.R. § 3.41(c), is ambiguous on whether an intervenor is a party.[3] Contrast the FCC's Rules of Practice, 47 C.F.R. §§ 1.223, 1.302. However, in light of the Supreme Court decisions cited, the Commission would withhold such a right at its peril in a case such as this where the intervenors are persons whose contract rights are at stake.[4] Furthermore, we do not construe anything the Commission has done as preventing further intervention; the Examiner announced at a prehearing conference that, if other bottlers wished to intervene, "they will be most welcome by me."[5]

3. The opinions of the Hearing Examiner denying the motion to dismiss the complaint for nonjoinder of indispensable parties and granting intervention indicated that the intervenors would not be parties. In addition, the Examiner stated at a prehearing conference that, if the intervenors wished to appeal his initial decision, they should seek leave to intervene from the Commission.

4. Agencies could well consider revision of their rules on intervention to distinguish between persons whose property rights are at stake and are thus entitled to all the rights of a party, and persons with a more generalized interest, a sort of super *amici curiae*, whose participation can well be restricted to avoid undue prolongation of the hearing. See generally, MacIntyre & Volhard, Intervention in Agency Adjudications, 58 Va.L. Rev. 230 (1972). For rules making such a distinction, see 14 C.F.R. §§ 302.14 (b), 302.15 (Civil Aeronautics Board). See also 47 C.F.R. §§ 1.223, 1.225 (Federal Communications Commission).

5. The FTC might consider revision of its rules to provide for publication of its complaints in the Federal Register whenever the complaint seeks to invalidate provisions of contracts between the respondent and others. Compare the FCC's Rules, 47 C.F.R. §§ 1.221, 1.223. This may well be required by Consolidated Edison Co. v. NLRB, *supra*, 305 U.S. at 233–234, 59 S.Ct. 206, and, indeed, by

We thus predicate our discussion on the basis that, subject to reasonable limitations to avoid repetition and delay, the four intervenors and other bottlers who may seasonably apply will receive from the FTC all those rights "provided by law" that are essential to a fair hearing. 16 C.F.R. § 3.14.

## II.

■ Although the Federal Trade Commission Act limits review by a court of appeals to "any person, partnership, or corporation required by an order of the Commission to cease and desist," 15 U.S.C. § 45(c), we agree with appellants that the fact that the order here assailed is not one requiring PepsiCo to cease and desist from anything does not lead inexorably to the conclusion that it is not reviewable, but only that it is not reviewable by petition to a court of appeals. Elmo Division of Drive-X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342, 344 (1965). Whether it was reviewable by suit in a district court depends on the construction given to the first two sentences of § 10(c) of the APA, now 5 U.S.C. § 704:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

Since the order was not one "made reviewable by statute," its reviewability hinges on whether it constitutes "final agency action for which there is no other adequate remedy in a court . . . ."

■■ If the APA uses the term "final agency action" in the same sense that the Judicial Code speaks of a "final decision" of a lower court, 28 U.S.C. § 1291, there could be little doubt about the answer. It is clear that "[d]enial of a motion to dismiss is not a final order and is therefore not appealable," 2A Moore, Federal Practice ¶ 12.14, at 2338 & n. 16 (2d ed. 1968), and this principle has been applied to a refusal to dismiss for failure to join indispensable parties. Ritter v. Wyoga Gas & Oil Corp., 110 F.2d 524 (3 Cir.), cert. denied, 311 U.S. 669, 61 S.Ct. 29, 85 L.Ed. 430 (1940). Many of the considerations supporting the final judgment rule with respect to appeals from decisions of lower courts are equally present in the case of agency action: The agency may find in favor of the respondent; the case may be settled; the reviewing court, in any event, will be in a better position to assess the matter when all the cards have been played. There can be no question that, under § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(c), PepsiCo can obtain review by a court of appeals of any cease and desist order that may emanate from the proceeding. The right of the intervenors to obtain judicial review of a cease and desist order, although somewhat less clear, is clear enough. The problem arises from the fact that, as indicated, the Federal Trade Commission Act limits review by a court of appeals to "any person, partnership, or corporation required by order of the Commission to cease and desist," etc., and any order in this proceeding would presumably run only against PepsiCo. However, if PepsiCo sought review, a court of appeals would surely allow the bottlers to intervene. FRAP 15(d). If PepsiCo did not appeal, review

---

§ 5(a) of the APA, now 5 U.S.C. § 554 (a). But it is not here contended that the Pepsi bottlers have not in fact received notice. All but one are members of the Bottlers' Association, and Bottler No. 513 would have to possess a naiveté not normally encountered in business affairs not to be aware of this proceeding which has been so extensively publicized

and so vitally affects the structure of the industry—if, indeed, PepsiCo has not itself notified him. The absence of formal notice thus does not require an injunction, cf. United States v. Aarons, 310 F.2d 341 (2 Cir. 1962), although as indicated it would be preferable if the FTC were to provide this in cases like the present.

would be available to the bottlers in a district court, whether or not they had been full-fledged parties before the FTC, since they would be "adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . ." 5 U.S.C. § 702. The notion that being a "party" before an agency either automatically confers or is a necessary condition of the right to judicial review has in fact been dead since Pittsburg & W. Va. Ry. v. United States, 281 U.S. 479, 486, 50 S.Ct. 378, 74 L.Ed. 980 (1930), see 3 Davis, Administrative Law Treatise § 22.08, at 241–243 (1958), although courts have not always appreciated this. The provisions of § 10(a) of the APA, now 5 U.S.C. § 702, should have dispelled any lingering doubt generated by earlier Supreme Court pronouncements.

The legislative history of the APA sheds little light on what the framers meant by "final agency action for which there is no other adequate remedy in a court." S.Rep.No.752, 79th Cong., 1st Sess. 27 (1945), says that the phrase "includes any effective agency action for which there is no other adequate remedy in any court." H.R.Rep.No.1980, 79th Cong., 2d Sess. 43 (1946), U.S.Code Cong. & Admin.News 1946, p. 1195, speaks of "any effective or operative agency action." The adjectives tend against a construction that would include denial of a motion to dismiss a complaint. A quick reading of the second sentence of § 10(c) might suggest that interlocutory rulings were never to be reviewed until there had been final agency action in the usual sense. However, the phrase "[a] preliminary, procedural, or intermediate agency action or ruling *not directly reviewable*" (emphasis supplied) suggests that some action may be directly reviewed, although it does not explain by what authority unless the reference is to special statutory review procedures. Perhaps the second sentence could best be read as designed to insure that, like similar orders in civil actions, see 9 Moore, Federal Practice ¶ 110.07, at 108–09 (2d ed. 1972), preliminary orders in administrative proceedings which are not immediately reviewable do not remain beyond review forever. *Cf.* 3 Davis, Administrative Law Treatise § 20.08, at 101 (1958). It is arguable also that the framers must have been familiar with the well-known decision in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938) and that, if they intended to overrule it, they would have spoken more clearly.[6] The decisions on the subject, both by the Supreme Court and by lower courts, are conflicting, as Professor Davis has pointed out, 3 Administrative Law Treatise §§ 20.01-.05 (1958). Moreover, most of them do not address themselves to what one would suppose to be the crucial issue, *i. e.*, the proper interpretation of § 10(c).[7]

6. Attorney General Clark and Representative Walter, sponsor of the House bill, indicated that § 10(c) was intended to enact existing law, S.Doc.No.248, 79th Cong., 2d Sess. 230, 369 (1946), and the Attorney General's Manual on the Administrative Procedure Act 103 (1947) suggests that § 10(c) enacted the *Myers* rule.

7. The courts instead speak of "exhaustion." This case shows how little help that term offers in the context here relevant. If the rule is simply that plaintiff must have "exhausted" administrative remedies with respect to the issue for which judicial review is sought, as he clearly must, PepsiCo has done that.

The real question is under what circumstances a court should review an order which, in Mr. Justice Brandeis' famous phrase, "does not command the carrier to do, or to refrain from doing, any thing; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation." United States v. Los Angeles & S. L. R. R., 273 U.S. 299, 309–310, 47 S.Ct. 413, 414, 71 L.Ed. 651 (1927). See the discussion in Jaffe, Judicial Control of Administrative Action 398–410

We find no need to proffer a definitive solution to the question of the reviewability of agency orders which are not "final" in the ordinary sense—something which, in any event, is beyond the capability of an inferior court. Rather' we shall accept for the sake of argument, despite possible contrary implications from the per curiam in Arkansas Power & Light Co. v. F. P. C., 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261 (1947), rev'g 81 U.S.App.D.C. 178, 156 F.2d 821 (1946), see also Bristol-Myers Company v. FTC, 469 F.2d 1116 (2 Cir. 1972) that we can extrapolate from cases such as Leedom v. Kyne, 358 U.S. 184, 79 S. Ct. 180, 3 L.Ed.2d 110 (1958), and McCulloch v. Sociedad Nacional de Marineros, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), a principle that one can find "final agency action for which there is no other adequate remedy in a court" if an agency refuses to dismiss a proceeding that is plainly beyond its jurisdiction as a matter of law or is being conducted in a manner that cannot result in a valid order.[8] The injury against which a court would protect is not merely the expense to the plaintiff of defending in the administrative proceeding, which *Myers* held not to be enough, 303 U.S. at 51–52, 58 S.Ct. 459, but, in a case like this, the enormous waste of governmental resources and the continuing threat of a complete restructuring of an industry. While PepsiCo and its bottlers cannot be heard to complain of the Commission's attempt to accomplish this restructuring, arguably they should not .be placed under that threat in a proceeding that must prove to be a nullity.

### III.

■ We are unable to conclude, how-ever, that appellants have brought themselves within the possibly over-generous principle with respect to reviewability that we have put forward. PepsiCo says that, unless all the bottlers are joined, its compliance with an eventual cease and desist order, after full judicial review, might subject it to liability in a suit by an unjoined bottler whose territory had been invaded by another to whom PepsiCo had sold syrup. Pepsi-Cola Bottling Company of Corvallis says that, if a cease and desist order is issued, it might be held liable if it then sought to sell in territory now granted to an unjoined bottler.[9] They contend that Congress could not have meant to allow the FTC to inflict such hardship when joinder of all the bottlers provides a means for avoiding it.

The proposition that a court would hold one person liable to another for doing something within the United

---

(1965). Compare also Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); Gardner v. Toilet Goods Ass'n, Inc., 387 U.S. 167, 87 S.Ct. 1526, 18 L. Ed.2d 704 (1967).

8. PepsiCo argues this to be the real thrust of Interstate Broadcasting Co. v. United States, 109 U.S.App.D.C. 255, 286 F.2d 539 (1960), and American Communications Ass'n v. United States, 298 F.2d 648 (2 Cir. 1962), holding orders denying intervention in administrative proceedings to be immediately appealable in circumstances where erroneous denial might invalidate any future order, although the decisions are technically distinguishable since the precise issue was whether the orders fell within the statute permitting review of "final" FCC orders, now 28

U.S.C. § 2342. See also Public Service Comm'n v. FPC, 109 U.S.App.D.C. 66, 284 F.2d 200 (1960); Lynchburg Gas Co. v. FPC, 284 F.2d 756 (3 Cir. 1960); City of Houston v. CAB, 115 U.S.App. D.C. 94, 317 F.2d 158 (1963).

9. Counsel for Pepsi-Cola of Corvallis seeks to explain its own failure to intervene by arguing that, if it did, it would be the only Oregon bottler bound by a cease and desist order. Putting aside the point that the same counsel apparently entertained no such fear when moving for intervention on behalf of three other bottlers, we think, for reasons explained in the text below, that non-intervening bottlers will be effectively bound, and Pepsi-Cola of Corvallis thus need have no hesitancy about intervening in the FTC proceeding if it considers this to be necessary to protect its interests.

States which a federal administrative agency, acting within its jurisdiction, has found to be necessary for the enforcement of a federal regulatory statute arouses some astonishment. This is particularly so in a context where the persons who would seek to enforce liability know of the proceeding and have had an opportunity to intervene before the agency "in order to safeguard their interests." Consolidated Edison Co. v. NLRB, *supra*, 305 U.S. at 234, 59 S.Ct. at 219. The astonishment becomes greater in light of the Supreme Court's clear statement in National Licorice Co. v. NLRB, 309 U.S. 350, 363, 60 S.Ct. 569, 577, 84 L.Ed. 799 (1940) that, in administrative proceedings devoted "to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights," then citing the very case of Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855), on which PepsiCo heavily relies. The Court declared, 309 U.S. at 365, 60 S.Ct. at 578, that, despite the nonjoinder of the employees with whom the employer had contracted, "it will not be open to any tribunal to compel the employer to perform the acts, which, even though he has bound himself by contract to do them, would violate the

Board's order or be inconsistent with any part of it." [10] Even more to the point, Mr. Justice Stone went on to observe, citing many cases, 309 U.S. at 365–366, 60 S.Ct. at 578, that "the order does not go beyond those in suits brought by the United States to restrain violations of the Sherman Act, where the injunction was broad enough to prevent the offender from carrying out contracts with persons not parties to the suits" and that "in proceedings before the Federal Trade Commission, the order restraining unfair methods of competition may preclude the performance of outstanding contracts by the offender" and these "have never been challenged because the holders of the contracts were not made parties."

PepsiCo attempts to dispose of these references to the antitrust and FTC cases by saying that they related to situations where removal of the restrictions sought to be annulled was beneficial to the nonjoined parties. While this may often have been true, it has not always been. In Paramount Famous Lasky Corp. v. United States, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145 (1930), aff'g 34 F.2d 984 (S.D.N.Y.1929), where the distributors but not the exhibitors were named as defendants, there was evidence that the arbitration provision there an-

10. PepsiCo advances two arguments to detract from the force of this seemingly controlling statement. One is that, in *National Licorice*, over the dissent of two Justices, the Court modified the NLRB order to provide that the notices required to be posted by the employer should include a statement that the invalidation of the contracts was "without prejudice to the assertion by the employees of any legal rights they may have acquired under such contracts." 309 U.S. at 367, 60 S.Ct. at 579. Apparently this was for the purpose of preserving employee rights, such as an irreducible wage scale, vacation with pay, extra compensation for overtime, etc., that had accrued prior to the effective date of invalidation. See Brief for Petitioner at 28. Compare FTC v. Motion Picture Advertising Service Co., 344 U.S. 392, 396 n. 3, 73 S.Ct. 361, 97 L.Ed. 426 (1953). The other is the portion of Consolidated Edison Co. v. NLRB, *supra*, 305 U.S. at 231–239, 59

S.Ct. 206, where the Court invalidated so much of a Board order directing the termination of contracts with independent unions, in part because the unions "were entitled to notice and hearing before [the contracts] could be set aside." *Id.* at 233, 59 S.Ct. at 218. But the Court was there dealing with a proceeding where the complaint had not challenged the validity of the contracts, and the opinion clearly indicates that, if it had and the unions had been given notice, they would have been "under a duty to intervene before the Board in order to safeguard their interests." *Id.* at 234, 59 S.Ct. at 219. Reading *National Licorice* and *Consolidated Edison* together, we think the Court is clearly of the view that, in an agency proceeding seeking to vindicate public rights against a respondent, the private rights of other parties can be concluded if they have had notice and an opportunity to intervene.

nulled was favored by at least a minority of the exhibitors. See 282 U.S. at 43, 51 S.Ct. 42, 34 F.2d at 985, 988–989; Brief for the United States in the Supreme Court at 56. When such an exhibitor sought to defend a contract action by claiming that the distributor-plaintiff had not complied with the arbitration clause, this was refused, Paramount Famous Lasky Corp. v. National Theater Corp., 49 F.2d 64 (4 Cir. 1931). Again, in Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L. Ed. 852 (1940), an action in which only Ethyl was named a defendant, the Court affirmed an order invalidating provisions in Ethyl's licenses to refiners which required them to sell only to licensed jobbers at a certain price differential above the refiners' best non-premium grade of gasoline, a system which, as the Court found, had the effect of controlling prices to a degree beyond that permitted by Ethyl's patent monopoly. It is rather plain that some of the refiners and jobbers might have regarded the price-fixing as beneficial. We are unable to follow PepsiCo's argument that invalidation of price-fixing agreements is invariably beneficial to a wholesaler or retailer. While it is obvious that a price-fixing agreement with a single distributor operates adversely to the latter, since he would prefer freedom to do as he wishes, it is not at all clear that the more usual case of agreements with all of a manufacturer's competing distributors does; many of them very likely consider it a beneficial protection against price-cutting. Yet it would be

news, indeed, that all such distributors must be joined in order for the manufacturer to be protected against subsequent suit. See United States v. National Lead Co., 63 F.Supp. 513, 525, n. 8 (S.D.N.Y.1945), aff'd, 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077 (1947); *cf.* Paramount Lasky Corp. v. National Theatre Corp., *supra*, 49 F.2d 64. Most pertinently, in United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), the Court considered the legality of various types of territorial restrictions upon distributors and retailers, although only a distributors' association and B.F. Goodrich & Co. (both a retailer and a distributor), were named as defendants along with the manufacturer.[11]

The upshot of all this is that the fears of PepsiCo and Pepsi-Cola of Corvallis of determinations in private suits inconsistent with a FTC cease and desist order are groundless and that Pepsi-Cola of Corvallis' dilemma whereby, if it intervenes to present its case, it will be bound but nonintervening bottlers will not be, see fn. 9, is of its own making. To be sure, the appellants' position *vis-a-vis* supposititious future private litigation would be more comfortable if they could proffer in bar an order in a proceeding to which every bottler had been made a party than if they were obliged to convince a court of what, on the basis of both authority and reason, we are confident the correct position is. But that is not enough to support a conclusion that any order emanating from the proceeding as now structured would

---

11. Other antitrust and FTC cases where the courts have invalidated or approved the invalidation of contract provisions arguably beneficial to the other party despite the failure to join the latter are United States v. Univis Lens Co., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408 (1942) (price-fixing provisions); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944) (*id.*); Butterick Co. v. FTC, 4 F.2d 910 (2 Cir.), cert. denied, 267 U.S. 602, 45 S.Ct. 462, 69 L.Ed. 808 (1925) (resale price maintenance and exclusive dealing provisions); Q. R. S. Music Co. v. FTC, 12 F.2d 730 (7 Cir. 1926) (*id.*); J. W. Kobi Co. v. FTC, 23 F.2d 41 (2 Cir. 1927) (resale price maintenance provisions). The last three cases were cited with approval in *National Licorice*, 309 U.S. at 366, 60 S.Ct. 569. While it is true that, as urged by PepsiCo's able counsel, the issue of non-joinder was not discussed, we have been cited to no case where a defendant or respondent has been held liable to an unjoined third party for complying with an antitrust decree or an FTC cease and desist order.

be void—the premise of our assumption that review at this stage may be proper. Since a cease and desist order in a proceeding wherein the bottlers could intervene would in fact bind them, decision whether to accede to PepsiCo's request for joinder was within the Commission's discretion. It was entitled to weigh the added comfort which all-out joinder would give PepsiCo against the mountain of paperwork and the delay that would result from joining the 513 Pepsi-Cola bottlers and the bottlers in the six other proceedings, see fn. 1, and also the precedent this would create in cases where even larger numbers were involved.[12] It may be, as PepsiCo urges, that the Commission has exaggerated the burden that joinder would entail. It is by no means certain that all the bottlers would seek to offer evidence; if large numbers did, the FTC could properly impose restrictions that would limit proof to typical situations and avoid repetition. But, apart from the fact that a proceeding conducted under such restrictions would not differ essentially from what can be accomplished through intervention, this is a choice to be made by the agency and not by the courts, so long as the fundamental rights of PepsiCo and the bottlers to be heard in opposition and not to be exposed to liability for complying with any order that may ultimately issue are adequately protected.[13] See Wolf Corp. v. SEC, 115 U.S.App.D.C. 75, 317 F.2d 139, 142–143 (1963). We are convinced they have been.

### IV.

Appellants urge that the already bad situation created by the FTC's initial refusal to join all the bottlers has since been altered for the worse by the motion of complaint counsel, filed on or about July 31, 1972, for partial summary judgment and, more particularly, for the inclusion in the order, if found warranted by the evidence, of a Metro Area Bottler Handicap provision. Whereas the order proposed in the complaint would simply have enjoined PepsiCo from enforcing territorial restrictions, the Metro Area Bottler Handicap provision would add a proviso requiring PepsiCo, in the case of the bottlers in the 200 largest locations, to enforce for ten years a new restriction which would prohibit such bottlers from selling elsewhere than in his own territory, the territory of another similarly situated bottler, or unassigned territory. As complaint counsel argued, "the net effect of the provision is to assure that several bottlers can compete effectively for the business in [the largest locations] while temporary protection is afforded small bottlers during the period in which they adjust their plant and marketing efforts to realize economies of scale." This, it is said, creates a clear conflict of interest between Metro Area bottlers which under the provision would remain subject to certain territorial restrictions, and the smaller bottlers which would not.

It is sufficient to answer that, with respect to this new aspect of the case, there has been no exhaustion of administrative remedies in the meaningful sense of that term, see fn. 7. No effort has been made to convince the FTC that, however matters previously stood, the motion of complaint counsel now calls for joinder of all the bottlers if the Metro Area Handicap is to be imposed. While we could dismiss the point on that ground, we think it better to

12. In Eastman Kodak Co. [1952–54 Transfer Binder] Trade Reg.Rep. ¶ 11,527 (FTC 1953), cited by the Commission, there were over 6,000 dealers; in the *Ethyl* case, *supra*, 309 U.S. 436, 60 S.Ct. 618, there were 11,000 jobbers.

13. PepsiCo argues that the bottlers' right to intervene should not affect its right to

have indispensable parties joined. Although this would be true in a civil proceeding involving only private rights, the Supreme Court decisions discussed above make it clear that the analogy does not hold in court or agency proceedings to vindicate public rights.

dispose of it on the merits. Although the Commission might properly choose to reverse its position on joinder in light of the Metro Area Handicap proposal, it is not bound to do so. What it is bound to do is to afford further opportunity for intervention by Metro Area bottlers, individually or as a group, since it now appears that the proceeding may have more adverse consequences for them than under the form of order initially proposed.

---

We thus conclude that even under the perhaps unduly liberal assumption that review would now lie if the proceeding as presently structured could not result in a valid cease and desist order, appellants have not brought themselves within that principle. The order dismissing the complaint is accordingly affirmed.

MEDINA, Circuit Judge (dissenting):

I respectfully dissent. I do not think we should leave the question of the subject matter jurisdiction of the District Court up in the air. I believe the District Court had subject matter jurisdiction in this case and that in the exercise of that jurisdiction the District Court on a remand should review the action of the Federal Trade Commission and enjoin it from continuing the PepsiCo proceeding unless and until it provides notice of the issues to all the PepsiCo bottlers and affords them a meaningful right to a hearing. I think this is required as a matter of sound judicial administration, as a matter of constitutional law, and as a matter of plain common sense. In the discussion that follows I shall attempt to demonstrate:

(1) That the District Court had subject matter jurisdiction.

(2) Despite the fact that the threat of suits against PepsiCo, in the event of a final decision that the contracts with the bottlers are illegal, may prove to be illusory, the provisions made by the Federal Trade Commission for intervention by the bottlers and for the protection of their rights are inadequate. Elementary principles of due process require at the very least notice to all the bottlers of the precise charges of illegality of their contracts with PepsiCo, including the Metro Area Bottler Handicap proposal of complaint counsel. It does not seem to me to make sense to go through this whole weary procedure again if the Commission accedes to complaint counsel's proposal.

(3) As a general rule courts should permit administrative agencies to exercise their expertise in deciding procedural questions affecting the administrative proceeding. Here, however, where constitutional issues of due process are present it is worth noting that the number of bottlers is no obstacle to an effective hearing. Further, the amount of paper work that has gone into this proceeding already, due to the determination of the Commission to deny full party status to the bottlers, far exceeds any necessary amount of procedural rulings and supervision the presence of any number of bottlers might be supposed to require. I find nothing "unmanageable" about the situation with the bottlers in; and this is especially true in a situation in which the Commission is endeavoring to restructure an entire industry.

I

*The Facts and the Procedural Posture of the Case*

On July 15, 1971 the Federal Trade Commission issued separate complaints charging PepsiCo and other soft drink manufacturers with engaging in unfair methods of competition in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C., Section 45. The complaint alleged that exclusive bottling agreements between PepsiCo and 513 bottlers violated the Act. The agreements grant the bottlers exclusive licenses to use PepsiCo's trademark in a specific territory on soft drinks prepared by the bottlers from the concentrate and syrups purchased from PepsiCo.

On August 11, 1971 three of the 513 bottlers and the Pepsi-Cola Bottlers Association moved to intervene in the FTC proceeding. On August 23, 1971 PepsiCo filed its answer to the complaint and asserted as an affirmative defense the failure of the Commission to join the 513 bottlers as parties. On October 12, 1971, PepsiCo moved before the Hearing Examiner to dismiss the complaint for nonjoinder of indispensable parties. Then on November 18, 1971 the Hearing Examiner issued an order granting the Association and the three bottlers what I believe to be a limited right to intervene. On January 20, 1972 the Hearing Examiner denied PepsiCo's motion to dismiss for nonjoinder of the bottlers and this decision was sustained by the Commission.

On April 28, 1972 PepsiCo instituted this action in the Southern District of New York and applied for a preliminary injunction. The FTC moved to dismiss. While these motions were pending, Pepsi-Cola Corvallis (a bottler) intervened in the District Court action in support of PepsiCo's position. On June 2, 1972 District Judge Cannella denied PepsiCo's application for a preliminary injunction and granted the Government's motion to dismiss the complaint (343 F.Supp. 396). Judge Cannella was of the view that the FTC order denying joinder of individual bottlers was not a final order and that the District Court lacked subject matter jurisdiction over the dispute. PepsiCo and Pepsi-Cola Corvallis both appealed from this decision and this Court heard the appeal on October 12, 1972.

After the notice of appeal to this Court had been filed, the complaint counsel in the FTC proceeding moved for partial summary decision on July 31, 1972. Included in this motion was a proposed remedy referred to as a "Metro Area Bottler Handicap" provision. The Commission has not at this time had the opportunity to rule on this motion generally or on the "Metro" clause specifically.

## II

### *The District Court Had Subject Matter Jurisdiction*

Questions of jurisdiction have always fascinated American judges and many of them, including the writer of this dissent, have failed at times to resist the temptation to seize upon any question of law affecting the jurisdiction of a court as presenting an opportunity for a learned treatise discussing at length every decision of every court having even a remote bearing on the particular point to be decided. In this way the volumes of Law Reports keep piling up with little benefit to anyone. I shall not now succumb to this temptation. On the contrary, I shall content myself with a statement of the reasons supporting my conclusion that the District Court had subject matter jurisdiction, and, without further discussion, cite a few cases which I think are in point.

Statutory authority sustaining the subject matter jurisdiction of the District Court is to be found in the provisions of Section 10(c) of the Administrative Procedure Act, 5 U.S.C., Section 704, that "final agency action for which there is no adequate remedy in a court are (is) subject to judicial review." There are numerous instances in which such review has been sustained, despite the interlocutory character of the administrative agency ruling sought to be reviewed. McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Jewel Companies, Inc. v. FTC, 432 F.2d 1155 (7th Cir. 1970); American Communications Association v. United States, 298 F.2d 648 (2d Cir. 1962); Interstate Broadcasting Co. v. United States, 109 U.S.App.D.C. 255, 286 F.2d 539 (1960). The only satisfactory test is that involving a pragmatic and flexible approach to insure that the ends of justice will be served. See, Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); McKart v. United

States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Naturally, where the ruling complained of involves factual findings or the exercise of administrative expertise, review by a court is not allowed.

My reasons for an affirmative application of the pragmatic and flexible approach are:

(1) Every effort to persuade the FTC to join these indispensable parties and thus afford them proper and reasonable notice and an effective hearing has failed. In this sense the ruling of the Commission is final.

(2) The Commission admits that extensive and valuable property and contract rights of the bottlers are involved.

(3) The rulings of the Commission relative to intervention are in my opinion inadequate and illusory. That the rights of those permitted to intervene are limited is apparent on the face of the order which appears at page A–230 of the Appendix. It will not do for the Hearing Examiner to make a statement that he had granted to the intervenors "the right of full participation." We can read, and the order does not provide for "full participation." Those permitted to intervene do not have the right to make motions or argue orally. as guaranteed to parties under FTC Rule § 3.-41(c), 16 C.F.R. § 3.41 (1972). FTC rules only permit a party to appeal an initial decision of the Hearing Examiner, FTC Rule § 3.52(a), 16 C.F.R. § 3.-52(a) (1972) and, as noted by Judge Cannella, these intervenors have no right of judicial review. It is, I think, no answer to say that an Appellate Court will probably permit them, on motion, to intervene. In these days of con-

gested calendars some Appellate Courts are not always so accommodating.

(4) PepsiCo's position on the indispensable parties point is a strong one. If the Commission adopts the "Metro Area Bottler Handicap" proposal of complaint counsel, PepsiCo's position on the indispensable parties point will become impregnable.[1] It is not reasonable to take the risk that the whole proceeding will ultimately turn out to be nugatory when this risk can be avoided by the simple expedient of making the bottlers parties. If this is done, all the cumbersome intervention procedures will be avoided.

(5) The lack of notice to the bottlers and the failure to provide them with an effective hearing raise constitutional questions. It is not in the interest of justice that determination of these questions be postponed until the entire proceeding is concluded, especially as these questions are ripe for decision now. I see that my brothers of the majority readily dispose of this question, as they disposed of the question of subject matter jurisdiction, by making an "assumption." In this instance they assume "that all the PepsiCo bottlers have received notice of this proceeding." They naturally cannot order the District Court to direct the FTC to modify its order and provide such notice, as they have voted to affirm Judge Cannella's order dismissing the case for lack of subject matter jurisdiction. But the point cannot be swept under the rug in this cavalier fashion. The plain fact is that no formal notice of any kind has been given by the FTC to PepsiCo's 513 bottlers. It is hinted in the majority opinion that the complaint was not published in the Federal Register, see foot-

---

1. The "Metro" provision goes much further than an order compelling PepsiCo to "cease and desist" from enforcement of certain features of the contracts with the bottlers. The "Metro" clause not only voids some of the contractual rights of the absent parties but imposes new obligations upon the parties to these contracts. Under the provision the larger bottlers now doing business in the 200 largest metro areas would be limited for ten years to selling in the metro area and forbidden to sell in non-metro areas presently not serviced by large bottlers. The small bottlers in the non-metro areas could sell in the metro areas. Thus it is proposed that by agency action new contracts be created and imposed upon an entire industry, although the interested parties are not represented in the adjudicatory process.

note 5, and nothing in this record suggests that such publication was made. It is strange doctrine to me that constitutional requirements of notice[2] and a fair hearing are complied with if the persons entitled to notice are members of a trade association that has moved to intervene in the proceeding. One might just as well suggest that the proceedings have been reported in the newspapers which were probably or possibly read by the 513 PepsiCo bottlers. The affidavit of Robert J. Sisk filed in support of the motion to intervene by Pepsi-Cola Bottlers Association states that 512 of the 513 PepsiCo bottlers are members of the Association and it makes the gratuitous assertion that the Association "effectively represents the interests of all the franchised Pepsi-Cola Bottlers in the United States." This means nothing. It is for the PepsiCo bottlers themselves to say who represents their interests, and, in some cases, these interests are adverse to one another. And how about PepsiCo bottler No. 513?

(6) At first I was inclined to suspect that the effort to have the PepsiCo bottlers made parties and the bringing of this action were in the nature of dilatory maneuvers. But, in the light of the colloquy during the oral argument, and a study of the record as complete as the time would allow, I am now convinced that PepsiCo is doing everything it can to expedite the proper conduct of the FTC proceeding. This is no dilatory move, but a sincere attempt to make the FTC comply with the requirements of law in an orderly way, and to protect its own interests and those of the PepsiCo bottlers to whom it may well owe a moral duty of protection.

## III

*On the Merits the 513 PepsiCo Bottlers Should Be Brought in as Parties*

I am still unable to understand why the FTC has taken such an adamant position against making the bottlers parties to this proceeding, unless it anticipates greater scope and control of the whole proceeding to restructure the soft drink industry if confusion reigns supreme. The equivocal manner in which the right of the bottlers to intervene has been granted; the complete failure to provide any form of notice to the separate bottlers or to afford them an effective hearing at which their substantial property and contractual rights may be determined in an orderly manner; and the insistence that, as the so-called right to intervene has been proffered, those who do not choose to come in will be bound by the final order in precisely the same manner and to the same extent as will be those who availed themselves of this so-called *right to intervene*—all these rulings obviously make for confusion. And, one may wonder, why? Unless there is something that does not meet the eye, it seems clear enough that giving reasonable notice and an effective opportunity to be heard to all interested parties would facilitate rather than hinder the prompt and efficient enforcement of the antitrust laws. Instead, we have all this weaving in and out of procedural niceties.

What puzzles me most is the insistence by my brothers of the majority and by the FTC that, in view of the rulings already made by the Commission on the subject of intervention all those PepsiCo bottlers who do not choose to intervene will, nevertheless, be "bound" by the final decision of the FTC on the facts and on the law. Surely these absent PepsiCo bottlers will not be "bound" in the ordinary sense of the word, by the application of traditional rules of res judicata or collateral estoppel. This is probably another example of corner-cutting, as in the case of the assumption *arguendo* that the District Court had subject matter jurisdiction, and the assumption that all the PepsiCo

---

2. See, as to basic notice doctrine required to meet the standards of due process, Mullane v. Central Hanover Trust Co.,

339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

bottlers had notice of the proceeding.[3] I say the record makes it plain that no formal notice whatever was given to the PepsiCo bottlers and that this important constitutional requirement of due process cannot be satisfied by mere divination or guesswork. Furthermore, I say the absent bottlers who may choose not to intervene will not be "bound." Chase National Bank v. City of Norwalk, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934); Western Union Tel. Co. v. Foster, 247 U.S. 105, 38 S.Ct. 438, 62 L.Ed. 1006 (1918); New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L.Ed. 96 (1899); Burke v. Morphy, 109 F.2d 572 (2d Cir. 1940), cert. denied, 310 U.S. 635, 60 S.Ct. 1078, 84 L.Ed. 1404 (1940); McGhee v. United States, 437 F.2d 995, 194 Ct.Cl. 86 (1971).

Perhaps all that is meant by "bound" is the same argument advanced concerning the decision in National Licorice Co. v. NLRB, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940), although this can scarcely be so because both in the majority opinion and in the FTC argument it is said that the absent parties will be bound because, whether they knew it or not, they had been proffered the right to intervene. No intervention whatever was involved in *National Licorice.*

So, I address myself now to the claim that does depend upon *National Licorice,* which claim, as I understand it, is: that in the event the FTC decides that some part of PepsiCo's contract with its franchisees, the bottlers, is unlawful as a violation of the antitrust laws, no such bottler could thereafter sue PepsiCo for violation of the terms of the contract, because the FTC was acting to enforce public as distinct from private rights. The difficulty with this argument is that it goes too far. There are numerous rights created by these contracts for the benefit of both PepsiCo and the bottlers. The fact that, after a federal Court of Appeals has enforced an FTC cease and desist order, other courts will not rule to the contrary, does not dispose of the issue under discussion. After final disposition of the case by the FTC, I think it will be open to individual bottlers, who are not made parties, to sue PepsiCo for the vindication of other rights inherent in the franchises and that, depending on the terms of the final order, the bottlers who had been joined as parties could not sue without being met by a defense of res judicata or collateral estoppel and a motion for summary judgment. It will, of course, be recalled that the Court in *National Licorice* specifically made the language of the opinion on which my brothers and the FTC rely inapplicable to rights of the individual employees not necessarily involved in the violation of the National Labor Relations Act.

There remains the contention that 513 bottlers are too many, especially as hundreds of others are involved in the proceedings against Crush International Limited, Dr. Pepper Co., Coca Cola Co., Seven Up Co., and National Industries Co. It is said that joining so many bottlers will make the proceeding "unmanageable." Back in the days of the Medes and the Persians this argument might have seemed plausible. But in a modern setting it has no merit what-

3. Even if it be assumed that the PepsiCo bottlers or most of them knew that a proceeding against PepsiCo was pending in the FTC, this would not suffice. For example, the Supreme Court has declared as violative of due process a New Jersey non-resident motorist statute lacking a "provision for communication to the proposed defendant, such as to create reasonable probability that he would be made aware of the bringing of the suit." (Wuchter v. Pizzutti, 276 U.S. 13, 25, 48 S.Ct. 259, 262, 72 L.Ed. 446 (1928)). There the defendant actually received notice of the suit but the lack of a formal mechanism to insure the reasonable probability that he would receive notice of the pending suit, rendered the statutory scheme constitutionally defective. Thus, if this Court decides that the Commission must provide a method of notice best calculated to reach the bottlers in order to conform to due process, then the mere fact that most of the bottlers received some form of informal notice would not transform an unconstitutional procedure into a constitutionally permissible one.

ever, as appears to be recognized by my brothers of the majority. The advances made by judicial administration in recent years make it perfectly plain that the modest numbers here involved can readily be handled with justice to all. It seems unlikely that more than a few of the PepsiCo bottlers will take the trouble to hire lawyers and come in to defend their rights. Those who do come in, even in considerable numbers, can be formed into consolidated groups or otherwise directed in such fashion as to avoid repetition or confusion. In fact, as I have already said, making the PepsiCo bottlers parties to this proceeding will facilitate in every way the prompt and just disposition of the issues.

Accordingly, I would remand the case to the District Court with instructions to enjoin the FTC from further proceeding in its effort to restructure the soft drink industry until it had made the PepsiCo bottlers parties.