75 F.3d 536
 26 Envtl. L. Rep. 20,717, 96 Cal. Daily Op.
Serv. 629,
96 Daily Journal D.A.R. 977
 GENERAL ATOMICS, a California corporation, Plaintiff-Appellant,
v.
UNITED STATES NUCLEAR REGULATORY COMMISSION; Ivan Selin, as
a member of the United States Nuclear Regulatory Commission;
E. Gail De Planque, as a member of the United States
Nuclear Regulatory Commission; Kenneth C. Rogers, as a
member of the United States Nuclear Regulatory Commission,
Defendants-Appellees.
 No. 95-55520.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 17, 1995.
Decided Jan. 30, 1996.
 
 Stephen M. Duncan, Mays & Valentine, Alexandria, Virginia; Richard A. Paul, Gray, Cary, Ware & Freidenrich, San Diego, California, for plaintiff-appellant.
 Daryl M. Shapiro, Karen D. Cyr, and John F. Cordes and E. Leo Slaggie, United States Nuclear Regulatory Commission, Washington, D.C.; Beth L. Levine, Assistant United States Attorney, San Diego, California, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before: HUG, ALARCON, and LEAVY, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 General Atomics appeals the district court's dismissal of its suit for lack of subject matter jurisdiction. The district court dismissed the claim holding that initial jurisdiction of the suit was vested in the courts of appeals. Alternatively, the court held that General Atomics' suit was premature because the Nuclear Regulatory Commission had not entered a final appealable order. General Atomics asserts that the district court had jurisdiction over its claim or, in the alternative, that the district court should have transferred the case to this court for adjudication. We have jurisdiction of the appeal under 28 U.S.C. § 1291, and we affirm.
 
 I. BACKGROUND
 
 2
 Appellant General Atomics is the third-tier parent corporation of Sequoyah Fuels Corporation which holds a Source Materials License for its facility at Gore, Oklahoma issued from the Nuclear Regulatory Commission ("NRC").[1] It does not hold any license for the facility. General Atomics does have a license from the NRC for its TRIGA reactors, used in training, research and isotope production, and for its use of source materials in research and development, but General Atomics is not a licensee of the NRC in connection with any aspect of the Sequoyah Fuels Corporation facility in Gore, Oklahoma. General Atomics purchased Sequoyah Fuels in 1988 from Kerr-McGee with the express permission of the NRC. Under Sequoyah Fuel's prior license, Kerr-McGee was obligated to guarantee the proper decommissioning and reclamation of the facility. When General Atomics acquired the facility, no such guarantee was required. In November 1992, for reasons that are disputed, Sequoyah Fuels ceased operations at the Gore, Oklahoma facility. When the plant closed, the NRC began supervising the process of decommissioning the facility.
 
 
 3
 On October 15, 1993, the NRC staff issued an order holding General Atomics and Sequoyah jointly and severally liable for the clean up of the facility, and requiring General Atomics to post assurance for the clean up in the amount of $86 million. General Atomics filed a motion for summary disposition with the Atomic Safety and Licensing Board claiming that the NRC had no jurisdiction over General Atomics because General Atomics does not hold any license from the NRC. The Board denied the motion on June 8, 1994, reasoning that material issues of fact remained with respect to the jurisdiction concerns. Specifically, the Board wanted to examine the control that General Atomics exercised over Sequoyah to see if General Atomics was a de facto licensee. On August 23, 1994, the NRC denied interlocutory review for similar reasons. The $86 million bond assurance order was stayed until the conclusion of proceedings to determine if the NRC could exercise jurisdiction over General Atomics.
 
 
 4
 On November 10, 1994, General Atomics filed suit in the district court in the Southern District of California for declaratory and injunctive relief, seeking a judgment that in exercising jurisdiction over General Atomics, the NRC acted in excess of the jurisdiction and authority granted in the Atomic Energy Act. On March 2, 1995, the district court dismissed the suit on two grounds: (1) that the court was without subject matter jurisdiction because initial jurisdiction of the claim was vested in the courts of appeals under the Hobbs Act; and (2) in the alternative, that there was no final appealable order issued by the NRC.
 
 II. JURISDICTION OF THE DISTRICT COURT
 
 5
 We must first determine whether the district court properly held that it did not have jurisdiction over General Atomics' suit against the NRC. Appeals from NRC orders are governed by a provision of the Administrative Orders Review Act, 28 U.S.C. § 2342, commonly referred to as the Hobbs Act. The applicable provision of the Hobbs Act states:
 
 
 6
 The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--
 
 
 7
 . . . . .
 
 
 8
 (4) all final orders of [the NRC] made reviewable by section 2239 of title 42....
 
 
 9
 28 U.S.C. § 2342.[2] Section 2239 of Title 42 provides for Hobbs Act review of "[a]ny final order entered in any proceeding" that involves "the granting, suspending, revoking, or amending of any license or construction permit, or application to transfer control, and in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees." 42 U.S.C. § 2239(b), (a)(1)(A).
 
 
 10
 General Atomics filed suit in federal district court under the theory that this suit escaped application of the Hobbs Act. Focusing on the language of the statute, General Atomics argues that the Hobbs Act can only apply to hearings regarding "the granting, suspending, revoking, or amending of any license." See 42 U.S.C. § 2239(a)(1)(A). Because its suit involves reclamation costs by an entity without a license, General Atomics contends that the Hobbs Act does not apply. We disagree.
 
 
 11
 In Florida Power & Light Co. v. Lorion, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Supreme Court held that the Hobbs Act is to be read broadly to encompass all final NCR decisions that are preliminary or incidental to licensing. Noting that the language of section 2239 is ambiguous, id. at 736, 105 S.Ct. at 1603, the Court held that Congress intended to provide for initial court of appeals review of all final orders in licensing procedures, regardless of whether a formal hearing was ever initiated. Id. at 746, 105 S.Ct. at 1608. The Court concluded that section 2239 is to be read liberally. See id. at 745, 105 S.Ct. at 1607 ("Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals.").
 
 
 12
 The district court correctly determined that Lorion controlled and that under a broad reading of the Hobbs Act initial jurisdiction of General Atomics' claims was vested in this court. When General Atomics objected to the NRC's order that it must assure the cleanup costs of Sequoyah, a hearing was initiated and has not been completed or resulted in a decision. The central issue in the agency hearing that General Atomics seeks to enjoin is whether a parent company of a licensee can be held responsible for cleanup costs. In particular, the NRC is seeking to determine whether General Atomics ran Sequoyah Fuels in such a way that the "corporate veil" can be pierced or whether General Atomics is a "de facto licensee." We hold that such a hearing falls under the auspices of the Hobbs Act.
 
 
 13
 The goal of this hearing is to determine whether General Atomics is, in fact, a licensee. Such a hearing falls within the auspices of the Hobbs Act in several ways. First, the hearing may determine that a license was de facto granted to General Atomics in 1988. A hearing of this nature would directly involve the granting and possible amending of the license for the Oklahoma facility. All NRC orders regarding the granting or amending of a license are subject to exclusive court of appeals review. Additionally, the NRC's jurisdictional hearing involves the manner in which non-licensees can control their subsidiaries consistent with an NRC license. Such a hearing is directly preserved for court of appeals review in the Hobbs Act. See 42 U.S.C. § 2239(a)(1)(A) (granting Hobbs Act review for "any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees").
 
 
 14
 Finally, we note that courts of appeals have exclusive jurisdiction to review NRC decisions regarding jurisdiction. See also Natural Resources Defense Council, Inc. v. NRC, 606 F.2d 1261, 1265 (D.C.Cir.1979). Because the hearing that General Atomics challenges is a jurisdictional hearing, the proper forum for General Atomics to challenge the NRC's final decision is the court of appeals. The district court was without jurisdiction to entertain the suit.
 
 III. TRANSFER OF THE ACTION ON APPEAL
 
 15
 Upon determining that it did not have jurisdiction over General Atomics' claims, the district court dismissed the case. General Atomics argues that if the district court did not have jurisdiction, the court had an obligation to transfer the action on appeal to this court for adjudication.
 
 
 16
 The transfer of a suit to solve a jurisdictional defect is a mandatory procedure controlled by federal law. The federal transfer statute states:
 
 
 17
 Whenever a civil action is filed in a court ..., including a petition for review of administrative action, ... and that court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.
 
 
 18
 28 U.S.C. § 1631. General Atomics contends that pursuant to this statute, when the district court determined it did not have jurisdiction it was required to transfer the action on appeal to this court.
 
 
 19
 The record below provides no indication that General Atomics ever requested or that the district court ever considered such a transfer. Although it would be possible to remand the case to the district court to determine whether a transfer to this court is in the interest of justice, we have held that such a procedure is disfavored.
 
 
 20
 [W]hen, as here, the record reveals the considerations relevant to "the interest of justice," we have dispensed with the convoluted procedure of remanding to the district court to consider whether transfer back to this court is appropriate.
 
 
 21
 Kolek v. Engen, 869 F.2d 1281, 1284 (9th Cir.1989) (citing Harris v. McCauley (In re McCauley), 814 F.2d 1350, 1352 (9th Cir.1987)). Therefore, we review the facts of this case to determine whether a transfer is in the interest of justice. We hold that a transfer to this court is not appropriate.
 
 
 22
 For a transfer to be "in the interest of justice," this court must be able to hear the suit upon transfer. If the transferee court lacks jurisdiction, the transfer is obviously improper. Clark v. Busey, 959 F.2d 808, 812 (9th Cir.1992). The district court below ruled alternatively that even if it had jurisdiction over General Atomics' suit, it was barred from hearing the case because of the lack of a final NRC order. We hold that the alternative grounds advanced by the district court precludes appellate review of General Atomics' claims.
 
 
 23
 Under both the Administrative Procedures Act, 5 U.S.C. § 704, ("APA"), and the Hobbs Act, this court can review actions of the NRC as long as a final order has issued. The Supreme Court has stated that the finality requirement should be flexible. Abbott Lab. v. Gardner, 387 U.S. 136, 149-50, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967). Courts should look and see if the agency's position is "definitive." FTC v. Standard Oil Co., 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980). Courts should also look and see if the agency action is affecting the plaintiff's day-to-day activities. Id.; see also Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 193, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985) ("[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury....").
 
 
 24
 The NRC's order in this case is far from definitive. Although General Atomics argues that the NRC's actions show that the commission has prejudged the case, we disagree. The NRC is conducting a factual hearing to determine what control General Atomics has exercised over Sequoyah Fuels. This hearing will determine whether General Atomics is a de facto licensee, and thus whether it can exercise jurisdiction over General Atomics. The company's obligations under the assurance bond have been stayed pending this determination. Until the agency has issued a final order, this court will not entertain General Atomics' suit. See Sierra Club v. NRC, 825 F.2d 1356, 1362 (9th Cir.1987) ("We will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary.").
 
 
 25
 We also reject General Atomics' contention that we should hear its claim absent a final agency action because of its pressing nature. Although there are some circumstances where appellate courts have held that final agency action is not required, see, e.g., Air Line Pilots Ass'n v. Civil Aeronautics Bd., 750 F.2d 81, 85 (D.C.Cir.1984) (holding that no final agency action is necessary when the agency refuses to act on a petition); PepsiCo, Inc. v. FTC, 472 F.2d 179, 187 (2d Cir.1972) (noting that final agency action is not needed when the agency refuses to dismiss a proceeding that is "plainly beyond its jurisdiction as a matter of law"), cert. denied, 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973), these circumstances are not present here.
 
 
 26
 Judicial review of an agency's jurisdiction should rarely be exercised before a final decision from the agency. "It is well established in administrative law that before a federal court considers the question of an agency's jurisdiction, sound judicial policy dictates that there be an exhaustion of administrative remedies." Marshall v. Burlington Northern, Inc., 595 F.2d 511, 513 (9th Cir.1979). This exhaustion doctrine requires that "an agency be accorded an opportunity to determine initially whether it has jurisdiction." Id. This court will intervene prior to an agency's determination of jurisdiction only when three requirements are met: "(1) there is clear evidence that exhaustion of administrative remedies will result in irreparable injury; (2) the agency's jurisdiction is plainly lacking; and (3) the agency's special expertise will be of no help on the question of its jurisdiction." Id.
 
 
 27
 None of these conditions are met in this case. Although General Atomics has argued that it is suffering financial distress because of the litigation, this is not enough to invoke appellate review. It has long been the rule that costs incurred in having to appear and defend against a charge do not constitute "a direct and immediate ... effect on the day-to-day business" of charged parties. Ukiah Valley Medical Ctr. v. FTC, 911 F.2d 261, 264 (9th Cir.1990) (quoting FTC v. Standard Oil, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980)). Additionally, General Atomics cannot claim that appellate review is needed merely because they might lose at the agency level. Appellate review would be available at that time.
 
 
 28
 Because of our holding in this case, General Atomics' Motion for Judicial Notice is DENIED.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Sequoyah Fuels Corporation is a wholly-owned subsidiary of Sequoyah Fuels International Corporation, which in turn is a wholly-owned subsidiary of Sequoyah Holding Corporation, which is a wholly-owned subsidiary of General Atomics
 
 
 [2]
 The quoted statute actually refers to final orders of the Atomic Energy Commission ("AEC"), which has been abolished and whose functions have been transferred in large part to the NRC. See 42 U.S.C. §§ 5814, 5841(f). Under 42 U.S.C. § 5871(g), final orders entered by the NRC in the performance of functions transferred from the AEC are reviewable as if they had been made by the AEC